2001 WY 27

STATE of Wyoming by and through the WYOMING DEPARTMENT OF REVENUE, Appellant (Petitioner),

v.

BUGGY BATH UNLIMITED, INC.; and Richard D. Hall, Appellees (Respondents).

Buggy Bath Unlimited, Inc.; and Richard D. Hall d/b/a Buggy Bath Car Wash, Appellants (Petitioners),

v.

State of Wyoming, Department of Revenue, Appellee (Respondent).

Nos. 00–148, 00–149.

Supreme Court of Wyoming.

March 8, 2001.

Representing State of Wyoming, Department of Revenue: Gay Woodhouse, Attorney General; Harold E. Meier, Senior Assistant Attorney General; and Michael Dinnerstein, Senior Assistant Attorney General.

Representing Buggy Bath Unlimited & Hall: Nancy D. Freudenthal of Davis & Cannon, Cheyenne, WY.

Before LEHMAN, C.J.; GOLDEN and KITE, JJ.; and SPANGLER, D.J. (Ret.).

KITE, Justice.

[¶ 1]   Buggy Bath Unlimited, Inc.[1] (Buggy Bath) submitted sales tax refund claims for the periods of January 1996 through October 1998 to the Department of Revenue (Department).  The Department denied the claims pursuant to application of its rules.  Buggy

Bath appealed to the State Board of Equalization (Board of Equalization) which interpreted § 39–6–410(c),[2] prior to a 1997 amendment, to require erroneously collected sales tax be refunded to purchasers and, subsequent to the amendment, to require erroneously collected sales tax be refunded to vendors.  The Department and Buggy Bath petitioned the district court for review of the decision, and the cases were certified to this court.  We affirm in part and reverse in part, holding that § 39–6–410(c), both pre- and post 1997 amendment, requires all erroneously collected sales tax be refunded to the vendor.

## ISSUES

[¶ 2]   The Department, as the appellant in Case No. 00–148, structures the issues in its opening brief and reply brief in this manner:

Do refunds of overpaid sales taxes belong to the customers who paid them or the vendors who merely collected them? (Opening Brief)

Are The Vendors Here Estopped From Denying That They Collected Sales Tax From Their Customers And Calculated Their Sales Tax Based Upon Their Net Receipts by Their Own Admissions?  (Reply Brief)

Buggy Bath, as the appellee in Case No. 00–148, states one issue as follows:

Was the State Board of Equalization correct to order a sales tax refund of erroneous payments made by Buggy Bath based on gross receipts from coin operated car wash machines?

Buggy Bath, as the appellant in Case No. 00–149, frames one issue:

Did the State Board of Equalization err in denying a portion of Appellant's sales tax refund claim by (1) applying a prior refund law existing at the time the overpayments were made instead of the law in effect on the date of the claim;  and (2) construing that prior law so that only purchasers and not vendors may receive a

---

1.  For the sake of clarity, the joint appellants/appellees, Buggy Bath Unlimited, Inc. and Richard D. Hall, will be referred to collectively as "Buggy Bath."

2.  Recodified in 1998 as Wyo.Stat.Ann. § 39–15–109(c) (Michie Supp.1998).  We will consistently refer to this statute by the pre–1998 recodification citation of § 39–6–410(c).

refund of tax erroneously paid by the vendor?

## FACTS

[¶ 3] In February 1997, the Department adopted a regulation imposing sales tax on the sales price charged for washing motor vehicles (car-wash rule).[3] Department of Revenue Rules ch. 2 (Sales and Use Tax), § 13(d) (Specific Taxability Issues) (2/24/97) (superseded 4/13/00). Subsequently, through a declaratory judgment action filed by another car wash business, the Seventh Judicial District Court declared the rule null and void. The Department did not appeal this final decision and ceased collecting sales tax pursuant to the car wash rule.

[¶ 4] Buggy Bath is a car wash business with four separate facilities in various parts of Wyoming. On January 26, 1999, Buggy Bath filed a claim for refund of $3,781.28, which it had paid under protest to the Department pursuant to the car wash rule, for the months of September and October 1998. On January 28, 1999, Buggy Bath filed a second claim for refund of $114,974.08 it had paid for the periods of January 1996 through August 1998. The total amount of monies claimed for refund was $118,755.36. The claims were denied pursuant to Chapter 2, Section 6(g)(i) of the Department of Revenue Rules[4] because Buggy Bath did not provide evidence that the taxes it requested to be refunded had in fact been returned by Buggy Bath to its purchasers. Buggy Bath appealed the denial to the Board of Equalization. Upon notice to the parties, the matter was considered on briefs and documentary evidence without a contested case hearing. The Board of Equalization issued a final decision concluding that (1) prior to the amendment effective July 1, 1997, § 39–6–410(c)[5] required erroneously collected sales tax to be refunded to the purchasers of Buggy Bath's services and (2) taxes collected subsequent to the July 1, 1997, amendment required refund to the vendor, Buggy Bath. It also concluded that Chapter 2, Section 6(g)(i) did not apply and the proper rule was Chapter 2, Section 8,[6] which authorized refund of erroneous tax-

---

3. Buggy Bath asserts this rule reflected the Department of Revenue's prior unwritten position that income from self-service, coin-operated car wash machines was subject to sales tax. The record contains evidence that Buggy Bath remitted these sales tax monies to the Department of Revenue since 1973. The Department of Revenue does not dispute these contentions, and this payment history appears consistent with Buggy Bath's refund claims for monies submitted prior to the date the rule was adopted.

Department of Revenue Rules ch. 2 (Sales and Use Tax), § 13(d) (Specific Taxability Issues) (2/24/97) (superseded 4/13/00):

(d) Car Washes. The sales price charged for washing or polishing motor vehicles or other objects defined as tangible personal property is subject to the sales tax. The purchase of materials and supplies which become an ingredient of the service are wholesale purchases or sales as defined by W.S. 39–6–402(a)(x).

(i) Income derived from coin operated machines is subject to the sales tax. The purchase of materials and supplies which become an ingredient of the taxable service are wholesale purchases or sales as defined by W.S. 39–6–402(a)(x).

4. Department of Revenue Rules ch. 2 (Sales and Use Tax), § 6(g)(i) (Reporting/Filing Sales/Use Tax Returns) (2/24/97) (superseded 4/13/00):

(g) Deductions.
(i) Refunds. Vendors are entitled to claim a deduction from gross sales receipts on the tax return for refunds after the tax is refunded to the purchaser.

5. *See supra* note 2.

6. Department of Revenue Rules ch. 2 (Sales and Use Tax), § 8 (Refunds and Credits) (2/24/97) (superseded 4/13/00):

(a) General. The Department will issue refunds or credits to the vendor from whom the original tax payment was received. Under special circumstances the Department may refund overpayments of tax to the consumer.

(b) Credit. The Department will credit vendor accounts for any overpayment of tax, penalty or interest. Credits will automatically be applied against the next appropriate tax liability on the vendor account.

(c) Refunds. Refund claims must be initiated by the vendor or consumer making the overpayment. The refund request must be made in writing to the Department and explain the basis of the refund request. Supporting documentation evidencing the overpayment must be submitted with the refund request. Postmarks will serve as the date of refund request and will begin tolling of the statute of limitations. The Department will refund or deny all refund claims within ninety (90) days of the date adequate supporting documentation is received.

(d) Statute of Limitation. Requests for refund or credit of sales tax shall be made within eighteen (18) months of the date of overpayment.

es to the vendor. Both parties filed petitions for review to the district court which certified the case to this court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

[¶ 5] When we review cases that have been certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *Union Telephone Company, Inc. v. Wyoming Public Service Commission*, 907 P.2d 340, 341–42 (Wyo.1995). Wyo.Stat.Ann. § 16–3–114(c) (LEXIS 1999) governs judicial review of administrative decisions. W.R.A.P. 12.09(a); *Everheart v. S & L Industrial*, 957 P.2d 847, 851 (Wyo.1998).

[¶ 6] The issues presented in this case require us to interpret Chapter 2, Sections 6(g)(i) and 8 of the Department of Revenue Rules to the extent they pertain to the refund of erroneously collected sales tax. Statutory interpretation is a question of law. *Wright v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 952 P.2d 209, 211 (Wyo.1998). An agency's conclusions of law are affirmed when they are in accordance with the law. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 970 (Wyo.1996). However, we correct the agency's error when it has failed to invoke and properly apply the correct rule of law. *State v. Bannon Energy Corporation*, 999 P.2d 1306, 1308 (Wyo.2000). The rules of statutory interpretation also apply to the interpretation of administrative rules and regulations. *Antelope Valley Improvement v. State Board of Equalization for State of Wyoming*, 992 P.2d 563, 566 (Wyo. 1999), *opinion clarified at* 4 P.3d 876 (Wyo. 2000).

[¶ 7] Our review of statutory interpretation begins with an inquiry into the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged. If more than one reasonable interpretation exists, we resort to general principles of statutory construction. When the legislature has spoken in unambiguous terms, however, we are bound to the results so expressed. *Osenbaugh v. State ex rel. Workers' Safety and Compensation Division*, 10 P.3d 544, 548 (Wyo.2000).

## DISCUSSION

[¶ 8] Upon evaluation of the petitions for review, we concisely restate the issues for consideration as follows:

Did the Board of Equalization properly construe § 39–6–410(c) to conclude that, prior to the 1997 amendment, refund to purchasers was required and, subsequent to amendment, refund to vendors was required?

Did the Board of Equalization err in determining Chapter 2, Section 8 of the Department of Revenue Rules, as opposed to Chapter 2, Section 6(g)(i), was applicable?

[¶ 9] The Department denied Buggy Bath's claims on the sole basis of Chapter 2, Section 6(g)(i) without reference to § 39–6–410(c).[7] The Board of Equalization concluded the proper rule was Chapter 2, Section 8. The Department takes issue with this determination.

[¶ 10] Administrative agencies have only those powers expressly conferred by statute. *US West Communications, Inc. v. Wyoming Public Service Commission*, 907 P.2d 343, 346 (Wyo.1995). This legal principle applies with equal force to an agency's authority to promulgate rules. *State Depart-*

---

Requests for refund of the use tax shall be made within eighteen (18) months of overpayment.

(e) Repossession. No refund of sales/use tax will be made as a result of repossession of tangible personal property.

7. The Department notice of denial of the refund request stated in relevant part as follows:

Based on the information and documentation you have provided, your 5–24–99 request for tax refund for your client, Buggy Bath Car Wash, **must be denied.**

Chapter 2, Section 6(g)(i) states: "Refunds. Vendors are entitled to claim a deduction from gross sales receipts on the tax return for refunds after the tax is refunded to the purchaser."

No evidence has been provided that these taxes were in fact refunded to the purchaser.

*ment of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994). Rules promulgated in excess of an agency's statutory authority are null and void. *State Board of Equalization v. Jackson Hole Ski Corporation,* 737 P.2d 350, 356 (Wyo.1987). On this legal basis, we must first consider the proper construction of § 39–6–410(c) to ultimately determine whether the Board of Equalization's application of the Department's rules was correct.

## A. Construction of § 39–6–410(c): Pre- and Post–1997 Amendment

[¶ 11] The 1997 amendments made to § 39–6–410(c) are illustrated below, with strikeout text indicating language which was removed and underlined text denoting language which was added:

> (c) Any ~~license fee,~~ tax, ~~assessment,~~ penalty or interest which has been erroneously paid, collected or computed shall *either* be credited against any subsequent tax liability of the vendor or ~~may be~~ refunded. No credit or refund shall be allowed after ~~eighteen (18) months~~ *three (3) years* from the date of overpayment. The receipt of a claim for a refund by the department shall toll the statute of limitations. All refund requests received by the department shall be approved or denied within ninety (90) days of receipt. Any refund or credit erroneously made or allowed may be recovered in an action brought by the attorney general in any court of competent jurisdiction.

1997 Wyo. Sess. Laws ch. 111, § 1.

[¶ 12] The difference between the pre–1997 and post–1997 amended statutory language is minimal. The only substantive change was the increase of the refund claim period from eighteen months to three years from the date of overpayment. The remaining changes appear to have been made for the sake of clarification of the statutory language; e.g., the removal of the terms "license fee" and "assessment," the addition of "either," and the removal of "may be."

[¶ 13] The Board of Equalization, interpreting this court's decision in *M & B Drilling and Construction Company, Inc. v. State Board of Equalization,* 706 P.2d 243 (Wyo.

1985), held that, prior to the amendment, purchasers and not vendors were entitled to refunds and, subsequent to the amendment, vendors and not purchasers were entitled to the refund. We conclude this distinction, made on the basis of these minor amendments to the statute, is in error.

[¶ 14] The Board's interpretation of our holding in *M & B Drilling* is unfounded. In *M & B Drilling,* this court construed Wyo. Stat.Ann. § 39–6–417(a) (Michie 1977) (amended 1991), which provided: "(a) Any vendor who under the pretense of collecting the [sales] taxes imposed by this article collects and retains an excessive amount or who intentionally fails to remit to the board the full amount of taxes when due is guilty of a misdemeanor." 706 P.2d at 246. The statute at issue made it a crime for vendors through "pretense" to purposefully collect erroneous sales taxes. *Id.* M & B argued the sales tax it had collected in violation of this statute should be applied to its underpayment of its own sales tax liability as a contractor. This court stated: "The vendor should, we think, not be permitted—unless the statute in clear and positive language so says ... to use the money of a vendee who for one reason or another has overpaid the sales tax on a purchased article to offset the failure of such vendor to collect the proper amount from another taxpayer." 706 P.2d at 245–46. In so concluding, the court relied on its prior holding in *Walgreen Co. v. State Board of Equalization,* 62 Wyo. 288, 166 P.2d 960, 964 (1946). In *Walgreen,* similar to *M & B Drilling,* the vendor was attempting to apply sales tax erroneously collected from purchasers to sales tax imposed on and owed by the vendor itself. Both *M & B Drilling* and *Walgreen* stand for the proposition that, when a vendor, through violation of the applicable statutes, erroneously collects sales tax from purchasers, the vendor cannot thereafter attempt to apply the erroneously collected monies to its own sales tax liability.

[¶ 15] These prior cases do not reflect the facts or the applicable statute of the instant case and thus are not analogous. First, Buggy Bath did not, as the law was applied at the time of the collection, inappropriately misapply the tax law to collect the sales tax.

Buggy Bath, at the direction of the Department, remitted the car wash sales tax until the Seventh Judicial District Court declared the car wash rule null and void and the Department advised vendors to cease remitting the sums. Second, Buggy Bath did not ask that these erroneously collected monies be applied to its own distinct tax liability, rather it asked for a refund.

[¶ 16] We must next consider what the refund statute, § 39-6-410(c), mandates and whether there is a distinction between its meaning prior to and after the 1997 amendment. The language of both versions of the subsection mentions only the vendor with no reference to the purchaser, taxpayer, or any other individual identifiable as a party to the sales transaction. This omission is not without significance because other provisions of the sales tax act do mention these other parties.[8] The operative sentence reads: "Any ~~license fee,~~ tax, ~~assessment,~~ penalty or interest which has been erroneously paid, collected or computed shall *either* be credited against any subsequent tax liability of the vendor or ~~may be~~ refunded." 1997 Wyo. Sess. Laws ch. 111, § 1. Pursuant to Wyo. Stat.Ann. § 39-6-402(a)(ix) (Michie 1997) (repealed 1998), the term vendor "means any person engaged in the business of selling at retail or wholesale tangible personal property, admissions or services which are subject to taxation under this article."[9] The specific language of § 39-6-410(c) only provides for the vendor to receive a refund or credit. No other party is named. It would be pure conjecture and speculation to read into the language additional provisions that either (1) permit the Department to withhold refunds to vendors pending proof of reimbursement to the purchasers or (2) permit the Department to make direct refunds to purchasers.

When the words used are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.... If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law.... This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment or gloss.

*Allied-Signal, Inc. v. Wyoming State Board of Equalization,* 813 P.2d 214, 219 (Wyo. 1991) (citations omitted); *see also Basin Electric Power Cooperative v. Bowen,* 979 P.2d 503, 509 (Wyo.1999); *Longfellow v. State,* 803 P.2d 1383, 1388 (Wyo.1991).

[¶ 17] In this court's opinion, the amended language does nothing more than to clarify the statute's intended meaning that any refund or credit must be made to the vendor. It removes "may be," a permissive term, and leaves "shall," a mandatory term, in place. This correction clarifies any uncertainty created by the combination of permissive and mandatory words. It utilizes the more precise language of "tax, penalty or interest" to describe the type of monies subject to credit or refund. Finally, it makes clear that there is an option to credit or refund, but one or the other shall occur. These are not substantive changes, and, contrary to the Board of Equalization's decision, they do not change the statute's meaning with regard to the

---

**8.** *See* Selective Sales Tax Act of 1937, Wyo.Stat. Ann. §§ 39-6-401 to -418 (Michie 1994): "purchaser" -39-6-404(a), 39-6-406(b), 39-6-407(d), 39-6-410(a); "donee" -39-6-406(d); "persons who are parties to the transaction" -39-6-410(a); "person who feels aggrieved by the payment of the taxes, penalty and interest" -39-6-410(e).

  *See also* Selective Sales Tax Act of 1937, Wyo. Stat.Ann. §§ 39-6-401 to -418 (Michie 1997): "purchaser" -39-6-404(a), 39-6-406(b); "taxpayer" -39-6-406(h)(iii); "[e]very person purchasing goods or services taxed by this article" -39-6-407(d); "persons who are parties to the transaction" -39-6-410(a); "person who feels

aggrieved by the payment of the taxes, penalty and interest" -39-6-410(e).

**9.** Recodified in 1998 as Wyo.Stat.Ann. § 39-15-101(a)(xv) (Michie Supp.1998) and amended in 2000 by adding the last sentence:

  (xv) "Vendor" means any person engaged in the business of selling at retail or wholesale tangible personal property, admissions or services which are subject to taxation under this article. *"Vendor" includes a vehicle dealer as defined by W.S. 31-16-101(a)(xviii)[.]* 2000 Wyo. Sess. Laws ch. 79, § 1.

recipient of the refund. We conclude, both pre- and post-amendment, the plain language of the statute requires the Department to credit or refund erroneously paid taxes (tax assessment, tax) to the vendor. The vendor is the only party mentioned and therefore is the only party entitled to a credit or refund.

[¶ 18] Our holding is consistent with decisions of other jurisdictions which have concluded the explicit statutory term used constitutes an unambiguous expression of legislative intent. These decisions construed terms such as taxpayer, collector, "taxpayer" defined as dealer and vendor, or "taxpayer" defined as the person liable for sales taxes imposed. *See SunTrust Bank, Nashville v. Johnson*, No. M199700202COAR3CV, 2000 WL 1817199 (Tenn.Ct.App. Dec.13, 2000); *Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330 (Tex.Ct. App.1999); *Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278 (Tex.1999); *Greater Park City Company v. Tax Commission, Operations Division*, 954 P.2d 873 (Utah Ct. App.1998); *Reimann v. Huddleston*, 883 S.W.2d 135 (Tenn.Ct.App.1993). Had the legislature chosen to include the purchaser or taxpayer of goods or services in this provision, it could have done so. It did not, and we decline to import such a meaning by strained inference.

**B. Board of Equalization Conclusion: Chapter 2, Section 8 of the Department of Revenue Rules Was the Applicable Rule**

[¶ 19] As noted previously, the Department denied Buggy Bath's claims on the sole basis of Chapter 2, Section 6(g)(i). Rules adopted pursuant to statutory authority and properly promulgated have the force and effect of law. *Fullmer v. Wyoming Employment Security Commission*, 858 P.2d 1122, 1123–24 (Wyo.1993). An administrative agency must follow its own rules and regulations. *Antelope Valley Improvement*, 992 P.2d at 566. However, rules promulgated in excess of an agency's statutory authority are null and void. *U S West Communications, Inc. v. Wyoming Public Service Commission*, 992 P.2d 1092, 1094 (Wyo.1999); *Jackson Hole Ski Corporation*, 737 P.2d at 356.

[¶ 20] Chapter 2, Section 6(g)(i) provides:

(g) Deductions.

(i) Refunds. Vendors are entitled to claim a deduction from gross sales receipts on the tax return for refunds after the tax is refunded to the purchaser.

The section is entitled "Reporting/Filing Sales/Use Tax Returns." The rule precludes a vendor from taking a deduction from its gross sales receipts until it has refunded the tax to the purchaser. There is no contention that Buggy Bath attempted to or actually took a deduction from its gross sales receipts. We agree with the Board of Equalization's conclusion. This is not the proper rule to be applied to a request for refund, as opposed to deduction, of erroneously paid sales tax.

[¶ 21] The Board of Equalization determined the proper rule is Chapter 2, Section 8 which provides in relevant part:

(a) General. The Department will issue refunds or credits to the vendor from whom the original tax payment was received. Under special circumstances the Department may refund overpayments of tax to the consumer.

This rule, as it provides for refunds or credits to the vendor from whom the original tax payment was received, is explicitly authorized by § 39–6–410(c). However, as we have concluded, the statute provides only for refund to the vendor. The provision for refund to the consumer is in excess of an agency's statutory authority and is therefore null and void. *U S West Communications, Inc.*, 992 P.2d at 1094; *Jackson Hole Ski Corporation*, 737 P.2d at 356.

[¶ 22] In sum, we hold the refunds must be made to Buggy Bath pursuant to § 39–6–410(c) and Chapter 2, Section 8 to the extent that rule provides for vendor refunds. The Department has raised a concern regarding its potential for double indemnity if Buggy Bath's purchasers apply for refunds subsequent to refund of the sales tax to Buggy Bath. This concern is unfounded. In the event individual purchasers seek refunds from the Department, it can rely on the fact it has made a lawful refund to the vendor.

**C. Application of Wyo.Stat.Ann. § 39–11–109(b)(ii) (LEXIS 1999) and Wyo.Stat. Ann. § 16–3–114(a) (LEXIS 1999)**

[¶ 23] Finally, through our inherent authority to ensure the efficient functioning and the prompt and just disposition of litigation, we elect to address an unbriefed issue. *Terry v. Sweeney*, 10 P.3d 554, 559 (Wyo.2000). This court has recently considered the application of § 39–11–109(b)(ii) [10] and § 16–3–114(a) [11] in relation to appeals from the Board of Equalization. It is our observation that many litigants have concluded these two statutes, when read together, require an appeal from the Board of Equalization to be filed in the district court for each county where property is or may be located as well as the First Judicial District as the location of the administrative action.[12] In the instant case, such an interpretation by the Department led it to file four separate petitions for review in three distinct judicial districts. This court, through an order of consolidation and dismissal, ultimately resolved the confusion created by these multiple district court certifications. However, such duplicative filings and filing fees result in misuse of scarce resources. Other litigants have taken the approach of filing only in the First Judicial District as the location of the administrative action regardless of the location of the property at issue. It is apparent that confusion exists and clarification at this time will prevent continued waste. "We have held a specific statute controls over a general statute on the same subject. A specific provision in a statute controls over an inconsistent general provision pertaining to the same subject." *Thunderbasin Land,*

*Livestock & Investment Co. v. County of Laramie,* 5 P.3d 774, 782 (Wyo.2000) (citations omitted). Applying this rule of statutory construction, we conclude that the specific provision of § 39–11–109(b)(ii), which addresses tax appeals from the Board of Equalization, controls over the general administrative appeals provision of § 16–3–114(a). This being the case, proper filing of appeals from the Board of Equalization should be made to the district court of the county in which the property, or some part thereof, is located. There is no need for duplicative filings when property is located in multiple jurisdictions. One jurisdiction will provide adequate access for judicial review.

[¶ 24] Affirmed in part and reversed in part.

---

**10.** Section 39–11–109(b)(ii): "Any person including the state of Wyoming aggrieved by any order issued by the board, or any county board of equalization whose decision has been reversed or modified by the state board of equalization, may appeal the decision of the board to the district court of the county in which the property or some part thereof is situated."

**11.** Section 16–3–114(a):

(a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken, or in which any real property affected by the administrative action or inaction is located, or if no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in the proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

**12.** Filing in the First Judicial District, as the location of the administrative action, is apparently based on the fact that the Board of Equalization's offices are located in Cheyenne.