2003 WY 54

The STATE of Wyoming by and through the WYOMING DEPARTMENT OF REVENUE, Appellant (Petitioner),

v.

UNION PACIFIC RAILROAD COMPANY, Appellee (Respondent).

Union Pacific Railroad Company, Cross–Appellant (Cross–Petitioner),

v.

The State of Wyoming by and through the Wyoming Department of Revenue, Appellee (Respondent).

Nos. 02–70, 02–91.

Supreme Court of Wyoming.

April 30, 2003.

---

Hoke MacMillan, Attorney General; John W. Renneisen, Deputy Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General; and Cathleen D. Parker, Assistant Attorney General, Representing Appellant State, Dep't of Rev. Argument by Ms. Parker.

Gregory C. Dyekman of Dray, Thomson & Dyekman, P.C., Cheyenne, WY, Representing Appellee Union Pacific Railroad Co. Argument by Mr. Dyekman.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This case involves review of a decision of the State of Wyoming, Board of Equalization (SBOE) regarding purchases of ballast from a quarry located in Laramie County, by Respondent/Cross–Petitioner Union Pacific Railroad Company (UPRC). After hearing, SBOE ruled that sales tax did not need to be paid by UPRC with respect to purchases of "construction" ballast since these purchases constituted destination sales. However, SBOE ruled that sales tax must be paid by UPRC with respect to its purchases of "maintenance" ballast. In addition, SBOE ruled that the UPRC "authority" had been properly revoked by DOR.

[¶ 2] A petition for review was filed by both parties in the First Judicial District Court in Laramie County, and later certified before this court. Upon our review, we affirm.

### ISSUES

[¶ 3] Petitioner/Cross–Respondent State of Wyoming, Department of Revenue (DOR) sets forth the following issues regarding its petition:

1. Did the [SBOE] incorrectly hold that the purchase of "construction" ballast in the State of Wyoming was not taxable pursuant to Wyo. Stat. §§ 39–15–101(a)(vii) and 39–15–103(a)(i)(A)?

2. Was the [SBOE's] decision to except "construction" ballast from taxation supported by substantial evidence as required by the Wyoming Administrative Procedure Act?

3. Did the [SBOE] fail to follow procedures required by law when it raised, *sua sponte*, factual and legal issues regarding the distinction between "construction" and "maintenance" ballast?

UPRC counters with these stated issues:

1. The [SBOE's] decision concerning taxability of "construction" ballast was consis-

tent with the Wyoming law of "destination sales" and supported by substantial evidence.

2. The [SBOE's] distinction between "construction" and "maintenance" ballast was based upon the evidence and arguments of the parties at the hearing and not a "new issue."

UPRC, in its petition, phrases the issue as:

Did the [SBOE] err in concluding that [DOR] adequately and properly revoked [UPRC's] "authority" concerning sales and use taxes effective June 1, 1998 by complying with the requirements set out in the [SBOE's] 1991 decision *In the Matter of the Appeal of Union Pacific Railroad Company*, Wyoming Board of Equalization Docket Nos. 88–110 and 89–61 (1991)?

DOR sets forth the issues to be addressed on UPRC's petition as:

1. Did the [SBOE] correctly hold that the retail purchase of ballast was taxable in the State of Wyoming?

2. Did the [SBOE] correctly determine that the [SBOE] did not have the statutory authority to direct [DOR] in the revocation of [DOR's] tax policy?

3. Did the [SBOE] correctly hold that [DOR] properly revoked [UPRC's] authority to purchase ballast tax free in the State of Wyoming?

### FACTS AND HISTORICAL BACKGROUND

[¶ 4]   Ballast is crushed granite rock used to construct or maintain railroad beds. UPRC is involved in the purchase of ballast in Laramie County in two different ways. In some instances, ballast is bought for construction purposes, and UPRC acts as a common carrier delivering the ballast to the ultimate user of the product. This type of purchase is made pursuant to a contract between the vendor and the ultimate user that calls for acceptance of the ballast upon inspection at the time of delivery outside of Wyoming.[1]   At the time of sale, this ballast is designated solely for use outside of Wyoming.[2]   In other instances, UPRC purchases ballast for maintenance purposes without a specific contract in place, and the ballast is retained by UPRC until an end use is discovered for the product.[3]

[¶ 5]   In 1975, DOR granted UPRC an exemption from paying sales tax on its purchase of inventory, including ballast, within Wyoming.   Rather, UPRC was required to pay a "use" tax to the state where the inventory, including ballast, was removed from inventory for use, if such a tax was imposed by that particular state.   Therefore, when ballast was used in Wyoming by UPRC, UPRC was required to pay use tax to Wyoming.   This exemption was known as the UPRC "authority."

[¶ 6]   During a meeting on June 17, 1997, Johnnie Burton, Director of DOR, advised UPRC that DOR had no statutory authority to agree to the UPRC "authority" and that the UPRC "authority" would not be continued.   In subsequent meetings between DOR and UPRC, DOR again expressed that the UPRC "authority" had been revoked.   This revocation was confirmed by UPRC. On March 12, 1998, the legislature enacted a direct pay statute, Wyo. Stat. Ann. § 39–15–107.1. During consideration of this legislation, UPRC lobbied for an amendment that would provide statutory authority for the UPRC "authority."   However, the requested language suggested by UPRC was not included in Wyo. Stat. Ann. § 39–15–107.1.

[¶ 7]   The State of Wyoming, Department of Audit (DOA) audited UPRC for the period of April 1, 1996, through March 31, 1999. After the audit, DOR sent UPRC a final determination letter dated January 10, 2000, assessing UPRC a tax deficiency of $1,211,814.15 for ballast purchases.   In November of 2000, Dan Noble, Administrator of the Excise Tax Division of DOR, adjusted the audit assessment to include only ballast purchased after June 1, 1998.   This adjust-

---

1.   In most, if not all, instances, UPRC is also the ultimate user.

2.   We will refer to the purchase of ballast under these circumstances as "construction" ballast.

3.   We will refer to the purchase of ballast under these circumstances as "maintenance" ballast.

ment reduced the tax assessment to $661,428.70 plus interest and penalty. In making this adjustment, DOR determined that the UPRC "authority" had clearly been revoked in writing on April 29, 1998.

## STANDARD OF REVIEW

[¶ 8]   In *Sinclair Oil Corp. v. Public Serv. Comm'n,* 2003 WY 22, ¶¶ 6–8, 63 P.3d 887, ¶¶ 6–8 (Wyo.2003), we set forth:

Our review of administrative decisions is guided by the standards set forth in Wyo. Stat. Ann. § 16-3–114(c):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.  The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

See *Newman v. State ex rel. Workers' Safety & Compensation Div.,* 2002 WY 91, ¶ 9,  49 P.3d 163, ¶ 9 (Wyo.2002) and *McTiernan v. Scott,* 2001 WY 87, ¶ 11, 31 P.3d 749, ¶ 11 (Wyo.2001).

We further enunciated in *Powder River Coal Co. v. State Bd. of Equalization,* 2002 WY 5, ¶ 5, 38 P.3d 423, ¶ 5 (Wyo.2002):

When we review cases certified pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance.  *State by and through Wyoming Department of Revenue v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 5, 18 P.3d 1182, ¶ 5 (Wyo.2001); *see also Union Telephone Company, Inc. v. Wyoming Public Service Commission,* 907 P.2d 340, 341–42 (Wyo.1995). Judicial review of administrative decisions is governed by Wyo. Stat. Ann. § 16-3–114(c) (LexisNexis 2001).  *Buggy Bath Unlimited, Inc.,* ¶ 5; W.R.A.P. 12.09(a); *Everheart v. S & L Industrial,* 957 P.2d 847, 851 (Wyo. 1998).

In addition, in *Powder River Coal Co.,* at ¶ 6 (citing *Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 983 (Wyo.1996) and *State by and through Dep't of Rev. v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 6, 18 P.3d 1182, ¶ 6 (Wyo.2001)), we noted when this court reviews questions of law posed in an administrative context, this court must conduct a de novo review.  We affirm an agency's conclusions of law when they are in accordance with the law. However, when the agency has failed to properly invoke and apply the correct rule of law, we correct the agency's error.  *Id. See also State ex rel. Workers' Safety & Compensation Div. v. Garl,* 2001 WY 59, ¶¶ 8–9, 26 P.3d 1029, ¶¶ 8–9 (Wyo.2001).

When issues are presented to us concerning whether there exists substantial evidence in the record to support the administrative decision, we have described substantial evidence as: "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *McTiernan v. Scott,* at ¶ 11.

The substantial evidence standard also requires that there be more than a scintilla of evidence.  It is not required that the proof attain such a degree of certainty as to support only one conclusion to the exclusion of all others.  Once the measure of evidence

has surpassed the scintilla threshold, the possibility of drawing two inconsistent conclusions from the entire record does not mean that the conclusion drawn by the administrative agency is not supported by substantial evidence. Even where this court, after reviewing the record, arrives at a different conclusion, the court cannot substitute its judgment for that of the agency's as long as the agency's conclusion is supported by substantial evidence.

*Joe Johnson Company v. Wyoming State Board of Control,* 857 P.2d 312, 314–15 (Wyo.1993) (quoting *Department of Employment, Labor Standards Division v. Roberts Construction Company,* 841 P.2d 854, 857 (Wyo.1992)). "For evidence to be sufficient to allow a 'reasonable mind' to accept an agency's conclusion, there must appear in the record evidence which allows either a definitive conclusion or a reasonable extrapolation based on the surrounding circumstances." *GID v. Wyoming State Board of Control,* 926 P.2d 943, 951 (Wyo.1996). *Id.* Therefore, when this court is charged with reviewing an agency's decision for substantial evidence pursuant to Wyo. Stat. Ann. § 16–3–114(c)(ii)(E),

[t]hat duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. *Joe Johnson Company,* 857 P.2d at 314–15. Occasionally, the process of review will necessarily require the reviewing court to engage in an assessment of the facts adduced during the administrative hearing. That assessment does not usually involve a reweighing or reconsideration of the basic facts found by the agency. However, as a by-product of that process, the reviewing court may arrive at an ultimate conclusion derived from those basic facts that is different from the agency's. A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence.

*McTiernan,* at ¶ 16 (footnote omitted). We have further stated in *Newman,* at ¶ 12 (quoting *State ex rel. Workers' Safety & Compensation Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)) that the substantial evidence test to be applied is as follows:

In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

## DISCUSSION

### Taxation of "Construction" Ballast

#### A. Interpretation Issues

[¶ 9] DOR asserts UPRC is liable for payment of sales tax on purchases of "construction" ballast under Wyoming statutory language and its own internal rules, as these transactions constitute the purchase of tangible personal property by UPRC in Wyoming. According to DOR, it does not matter what the nature of the ultimate use of the "construction" ballast is or that UPRC is or may be a common carrier with respect to these purchases. Not surprisingly, UPRC asserts that its purchases of "construction" ballast are destination sales and, therefore, not subject to Wyoming sales tax.

[¶ 10] DOR reasons that the point of transfer of title or possession of tangible personal property determines whether a sale transpires and thereby a taxable event occurs in Wyoming. DOR argues that because UPRC takes possession of the "construction" ballast at the quarry located in Laramie County, these purchases subject UPRC to the payment of the imposed Wyoming sales tax. Further, DOR contests that UPRC cannot be allowed to unilaterally determine the taxability of these purchases in Wyoming by merely modifying its contract with the ven-

dor to provide that "[t]itle, ownership and constructive possession of the ballast shall not pass from Seller to Buyer until delivery is completed at a delivery site designated by Buyer."

[¶ 11] Wyo. Stat. Ann. §§ 39–15–101(a)(vii) and 39–15–103(a)(i)(A), in applicable part, provide, respectively:[4]

(a) As used in this article:

. . .

(vii) "Sale" means any transfer of title or possession in this state for a consideration including the fabrication of tangible personal property when the materials are furnished by the purchaser. . . .

---

(a) Taxable event. The following shall apply:

(i) . . . there is levied an excise tax upon:

(A) The sales price of every retail sale of tangible personal property within the state[.]

Department of Revenue Rules and Regulations, Chapter 2, § 14(p)(i) states:

The point at which title or possession of tangible personal property passes to the purchaser shall determine the location of the sale. *Tangible personal property shipped by the vendor at the time of sale and not used in Wyoming, to an out of state location may be considered a destination sale and not subject to the sales tax.*

(Emphasis added.)

[¶ 12] In *McClean v. State*, 2003 WY 17, ¶ 6, 62 P.3d 595, ¶ 6 (Wyo.2003), we declared:

We have long recognized that conclusions of law, such as questions regarding statutory interpretation, are to be reviewed by this court *de novo*. *Hutchings v. Krachun*, 2002 WY 98, ¶ 10, 49 P.3d 176, ¶ 10 (Wyo.2002). In *Pagel v. Franscell*, 2002 WY 169, ¶ 9, 57 P.3d 1226, ¶ 9 (Wyo. 2002) (citing *Wyoming Cmty. College Comm'n v. Casper Cmty. College Dist.*, 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, ¶¶ 16–18 (Wyo.2001)), we stated:

In interpreting statutes, our primary consideration is to determine the legislature's intent. *Fontaine v. Board of County Comm'rs*, 4 P.3d 890, 894 (Wyo. 2000); *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo.1983). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal, Inc. v. State Board of Equalization*, 813 P.2d 214, 219 (Wyo.1991); *Phillips v. Duro-Last Roofing, Inc.*, 806 P.2d 834, 837 (Wyo.1991). When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. *Allied–Signal*, 813 P.2d at 219. Moreover, "[a]ll statutes must be construed *in pari materia*; and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and construed in harmony." *Fontaine*, 4 P.3d at 894 (citing *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d at 735).

Therefore, in performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994) (citing *Parker Land & Cattle Company v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo.1993)). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* We have said that divergent

---

4. Recodification of the applicable statutes occurred in 1999. Therefore, all references to statutes in this matter will refer to the 1999 version of the Wyoming statutes. Previously, Wyo. Stat.

Ann. §§ 39–15–101(a)(vii) and 39–15–103(a)(i)(A) were designated as Wyo. Stat. Ann. §§ 39–6–402(a)(iv) (Michie 1997) and 39–6–404(a)(i) (Michie 1997) respectively.

opinions among parties as to the meaning of a statute may be evidence of ambiguity. *Basin Electric Power Co-op. v. State Bd. of Control,* 578 P.2d 557, 561 (Wyo.1978). However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Allied–Signal,* 813 P.2d at 219.

This same analysis must be performed when we interpret the meaning of administrative rules and regulations. *Powder River Coal Co. v. State Bd. of Equalization,* 2002 WY 5, ¶ 6, 38 P.3d 423, ¶ 6 (Wyo.2002) (citing *State by and through Dep't of Rev. v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 6, 18 P.3d 1182, ¶ 6 (Wyo.2001)).

[¶ 13] Applying the plain and ordinary meaning to the language used in Wyo. Stat. Ann. §§ 39–15–101(a)(vii) and 39–15–103(a)(i)(A) and Department of Revenue Rules and Regulations, Chapter 2, § 14(p)(i), we find no ambiguity. All three clearly indicate that a taxable event occurs only when title or possession of tangible personal property passes to the purchaser in Wyoming. The clearly stated language of Department of Revenue Rules and Regulations, Chapter 2, § 14(p)(i) goes even further to provide that when tangible personal property is shipped by a vendor at the time of sale to an out-of-state location and not used in Wyoming, this purchase is not subject to Wyoming sales tax. Therefore, we determine that the purchase of "construction" ballast by UPRC in Laramie County does not constitute a taxable event. Under these transactions, neither title or possession to the ballast transfers to UPRC in Wyoming. This ballast is simply loaded into train cars for delivery to an out-of-state location. Further, this "construction" ballast is designated for use outside Wyoming at the time of sale.[5]

[¶ 14] The fact that UPRC is usually both the common carrier and the ultimate purchaser of the "construction" ballast is of little consequence. UPRC indisputably exclusively controls and operates the trains and locomotives in which the ballast is loaded and transported. However, neither title or possession to the "construction" ballast passes from the vendor to UPRC until it is accepted by UPRC, as the purchaser, at a predetermined destination outside of Wyoming. UPRC loads and carries the "construction" ballast as the common carrier agent of the vendor and never obtains "complete control" over this ballast during shipment as asserted by DOR. UPRC, as a common carrier, is bound to deliver the ballast to the location outside of Wyoming as directed by the vendor. Title or possession of the ballast is not transferred until UPRC, as the buyer, inspects and accepts the ballast at the construction site.

[¶ 15] The determination of a taxable event does not rest merely on the physical presence of the goods on the common carrier's transport equipment, but on the rights that the vendor retains in those goods. In the event that UPRC does not accept the ballast, the ballast must be shipped back to the quarry at the vendor's expense, and title or possession to the ballast never transfers from the vendor. Hence, because the vendor intends that title or possession to the "construction" ballast not transfer until the ballast is accepted by UPRC, as the purchaser, and the ballast is designated for use outside Wyoming at the time of its sale, these transactions must be characterized as non-taxable destination sales. Department of Revenue Rules and Regulations do not specify that transportation of the product in a destination sale must be made by a third party common carrier unrelated to the buyer or by the vendor, personally. Rather, the product must be merely transported at the direction of the vendor to a destination outside of Wyoming.

[¶ 16] It is of some interest to note that it is not practically or economically feasible to ship the huge quantities of ballast used by any other means than by railcar, and the

---

**5.** An effort has been made to characterize the transfer of title or possession in the ballast as "actual" or "constructive" by the parties. However, these characterizations are unnecessary as we hold that there has not been *any* transfer of title or possession to the "construction" ballast in Wyoming under the circumstances.

railway owned by UPRC is the only such transportation available from the subject quarry. Nevertheless, setting these established facts aside, if ballast was able to be shipped by the vendor through some other means by a common carrier other than UPRC, the purchases of "construction" ballast by UPRC must absolutely be characterized as destination sales and non-taxable under Wyoming law.

[¶ 17]   DOR also contends that the use of the word "may" within Department of Revenue Rules and Regulations, Chapter 2, § 14(p)(i) gives DOR the exclusive unilateral power and discretion to determine whether a particular sale does or does not constitute a destination sale. Clearly, the plain and obvious meaning of the word "may" within this rule simply allows the taxpayer to treat such transactions as defined as nontaxable destination sales. DOR's characterization of its authority also runs afoul of this court's directive that it is unfair and unlawful for an administrative agency to establish a policy requiring taxation at a late hour contrary to plainly stated language already relied upon by taxpayers without first giving adequate notice and warning and clarifying its position for the benefit of taxpayers. *Hercules Powder Co. v. State Bd. of Equalization,* 66 Wyo. 268, 208 P.2d 1096, 1111 (1949).

[¶ 18]   Administrative rules and regulations adopted pursuant to statutory authority have the force and effect of law. *State by and through Dep't of Rev. v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 19, 18 P.3d 1182, ¶ 19 (Wyo.2001) (citing *Fullmer v. Wyoming Employment Security Comm'n,* 858 P.2d 1122, 1123–24 (Wyo.1993)). Further, an administrative agency must follow its own rules and regulations. *Id.* (citing *Antelope Valley Improvement v. State Bd. of Equalization,* 992 P.2d 563, 566 (Wyo.1999)) (opinion clarified at 4 P.3d 876 (Wyo.2000)). Wyoming statutes are silent on this issue. Obviously, had the legislature desired a different result, it could have easily so specified.

[¶ 19]   In addition, DOR argues that SBOE's conclusion that purchases of "construction" ballast under these circumstances is not subject to sales tax in Wyoming is contrary to established Wyoming case law

authority and renders an absurd, illogical, unjust and unreasonable result. We disagree. DOR asserts that the facts in *State Bd. of Equalization v. Blind Bull Coal Co.,* 55 Wyo. 438, 101 P.2d 70 (1940), are almost indistinguishable from this case and, therefore, the holding of this court in that case is determinative. However, the facts in the *Blind Bull Coal Co.* case are most different than those presented in this case.

[¶ 20]   In *Blind Bull Coal Co.,* it was an undisputed material fact that the vendor sold the subject coal at its mine located in Wyoming to various individual purchasers. It was further stipulated by the parties that 1) all of the coal was delivered and received by the purchasers at or near the vendor's mine in Wyoming; 2) after receiving the coal these purchasers transported the coal into Idaho for use or consumption; 3) the vendor's records did not show that the coal was purchased for transportation into Idaho or elsewhere; and 4) no claim of exemption was made by any purchaser and filed with the vendor. At 71. Therefore, unlike the situation in this case, Blind Bull Coal Company, as the vendor, transferred possession of the product to the purchasers in Wyoming, and there was no disclosure that the product was to be utilized outside of Wyoming at the time of its sale. The purchasers also did not contend that Wyoming sales tax did not have to be paid on these transactions.

[¶ 21]   These distinctions in the *Blind Bull Coal Co.* case were recognized by this court in its opinion in *Morrison–Knudson Co., Inc. v. State Bd. of Equalization,* 58 Wyo. 500, 135 P.2d 927, 934 (1943):

   This case is similar to the case of *State Board of Equalization v. Blind Bull Coal Company,* 55 Wyo. 438, 101 P.2d 70. In that case sales of coal were made in Lincoln County, in this state, to purchasers who hauled the coal into Idaho for use or consumption. The coal was delivered by the seller at the mine and no claim for exemption was made by the purchasers. We held that the sales were not exempt from the sales tax imposed in this state and did not interfere with interstate commerce. Upon re-examination of the case

there can scarcely be any doubt of the correctness of the decision. In that case the purchasers could do with the coal after delivery to them as they pleased. They were not compelled to transport it into Idaho, but might if they wished sell it again to someone in this state.

[¶ 22] In addition, utilizing primarily an "intent of the vendor" analysis, this court determined that a taxable event had also occurred in *Morrison–Knudson Co.* We stated at 934–35:

In the case at bar, under the terms of the contract, the sales were made f. o. b. Parco, Wyoming. That was the place of delivery and passing of the title to the purchasers, unless an intention to the contrary appears. Sec. 98–906, Rev.St.1931; 55 C.J. 332, 333. No such contrary intention appears herein. The purchasers paid the freight, and, according to their testimony, they remitted the purchase price to the seller or, in some instances, paid it in this state. Part of the property was hauled to Parco and delivered to the railroad company. The delivery at that point was not interstate commerce. *Coe v. Town of Errol*, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715. Part of the property was loaded onto trucks or trailers by the purchasers, and apparently at the Seminoe Dam in this state, where the property was located and had been used. While the purchasers in other states in most instances of course contemplated that the goods should be shipped by interstate carrier, that mere fact did not withdraw the property from the state's power to tax it. *State v. Blasius*, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131. *The sellers did not agree to ship it to any destination outside of the state, and there is no evidence whatever in the record that they had any interest in the transportation beyond the point mentioned in the contract.* The only testimony aside from that contract, and from what has already been stated, is the testimony of a witness who stated that "the purchaser usually specifies how he wants delivery." *It would seem to be clear that under these facts the delivery to the purchasers was complete, the title*

*passed to them, and the property was accepted by them, in this state.*

(Emphasis added.)

[¶ 23] In both *Blind Bull Coal Co.* and *Morrison–Knudson Co.*, this court cited with approval the reasoning utilized by the United States Supreme Court in *Superior Oil Co. v. Mississippi*, 280 U.S. 390, 50 S.Ct. 169, 74 L.Ed. 504 (1930), wherein the United States Supreme Court applied an "intent of the vendor" analysis and held that a taxable event had occurred. In *Morrison–Knudson Co.*, at 935, we stated:

In [*Superior Oil Co. v. Mississippi*], the seller, in Mississippi, sold gasoline to the purchaser at Biloxi in that state. *The purchaser loaded it on boats at their wharves, and shipped it to fishermen in Louisiana through transactions which in the long run were equivalent to sales. No consignee in Louisiana, nor a place of destination, were designated at the time of the sale.* It was held that the sale was a sale in Mississippi, and that a tax to be paid by the seller did not interfere with interstate commerce.

(Emphasis added.)

[¶ 24] This court in *Morrison–Knudson Co.*, at 935, further cited as support for its determination the case of *Department of Treasury v. Wood Preserving Corp.*, 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188 (1941).

The facts in the *Wood Preserving Corporation* case were, so far as relevant here, about as follows: The corporation sold ties to the Baltimore and Ohio Railroad Company through a contract entered into in Ohio. The corporation did not itself produce any ties, but when a sale to the railroad company was made the corporation procured the ties sold from local producers in Indiana who delivered them to the railroad company in Indiana. At that point the corporation was represented by an agent, and the railroad company by an inspector. The ties were then examined, and those found by the inspector to be in accordance with specifications were accepted at that place. Indiana laid a tax on the receipts which the corporation derived from the sale of these ties. The court held the transaction to be intrastate and upheld

the tax against the contention that it was a burden on interstate commerce.

Thus, the United States Supreme Court in *Wood Preserving Corp.* having found that the vendor had agreed to deliver the ties to Indiana and that the actual transfer of ownership and possession of the goods occurred in Indiana, upheld the tax levied by the state of Indiana.

[¶ 25] Our determination in this case is also in accord with the reasoning and conclusion reached by this court in *Hercules Powder Co. v. State Bd. of Equalization*, 66 Wyo. 268, 208 P.2d 1096 (1949), wherein this court reversed the assessment of sales tax based on a lengthy and comprehensive analysis of the intention of the parties to that transaction. In that case, this court reasoned that ownership and possession of the property involved did not transfer because the vendor intended that ownership and possession of the property would not transfer until delivered to the purchaser. This court in *Cooley v. Frank*, 68 Wyo. 436, 235 P.2d 446 (1951), utilized a similar analysis in determining when delivery and acceptance of the goods involved in that case had occurred. Given the established case history expressed through this court's past opinions with respect to the issue at hand and our review of both existing statutory law and administrative rule in this area, we perceive absolutely no absurd, illogical, unjust or unreasonable consequence occurs as a result of the SBOE's ruling with respect to "construction" ballast in this case.

[¶ 26] Additionally, DOR complains that SBOE's decision allows purchasers who are common carriers to avoid sales tax liability by assuming the role of common carrier in all purchases. However, this is not the case. Again, a seller or vendor must intend that ownership or possession of the goods not transfer to the purchaser until delivery is made in another state with the goods involved being designated for use outside of Wyoming at the time of sale. If these conditions are not met, the transaction simply cannot be categorized as a destination sale and Wyoming sales tax imposed.

[¶ 27] Finally, DOR grieves a determination that the purchase of "construction" bal-

last under the given circumstances is not subject to sales tax creates a sales tax exemption not found in the Wyoming sales tax statutes. In support of this argument, DOR argues that when interpreting taxation statutes, there is a presumption against granting exceptions or exemptions and in favor of taxation citing as authority the cases of *General Chemical Corp. v. State Bd. of Equalization*, 819 P.2d 418, 422 (Wyo.1991) and *Commissioners of Cambria Park v. Bd. of County Comm'rs of Weston County*, 62 Wyo. 446, 174 P.2d 402 (1946). However, this court has enunciated that there must be recognized a distinction between what is actually taxed under the operative taxing language as opposed to what falls within such taxing authority and is thereafter exempted from taxation. In *Walgreen Co. v. State Bd. of Equalization*, 62 Wyo. 288, 166 P.2d 960, 977 (1946), we stated upon review of the statutory language at issue in that case:

It is as plain, as clear, as unequivocal as the English language can make it. There cannot be the slightest doubt as to its meaning. It does not require any one educated in the law to read it and understand it perfectly. The term 'taxable' was doubtless inserted in this place for the reason that not all sales are taxable. Some sales are specifically exempted under Sec. 2 of the Sales Tax Act. But in the case under Sec. 4 of the Act all sales made by the appellant herein are taxable, some at 2%, others at 1%. That is clear.

Likewise, it is absolutely apparent in this case that destination sales, as particularly defined, were intended to be outside the realm of Wyoming sales taxation. Accordingly, no exemption with respect to such transactions is involved.

### B. Substantial Evidence Issues

[¶ 28] DOR asserts that SBOE's decision is not supported by sufficient evidence. The record does disclose some evidence presented by DOR which is contrary to the ultimate decision rendered by SBOE. Sufficient evidence does exists however to support SBOE's determination. Adequate evidence was presented to show that the "construction" ballast bought was intended for use

outside of Wyoming at the time of its sale. The evidence also showed that the vendor did not intend that UPRC take either ownership or possession of this ballast until it was accepted by UPRC outside of Wyoming. This evidence establishes that the transactions involved were destination sales, and no Wyoming sales tax may be assessed under these circumstances.

■ [¶ 29] Further, we recognize, as we have on numerous other occasions, that we will not substitute our judgment for that of an agency when substantial evidence supports the decision. *Sinclair v. Public Serv. Comm'n*, 2003 WY 22, ¶ 38, 63 P.3d 887, ¶ 38 (Wyo.2003) (citing *Elk Horn Ranch, Inc. v. Bd. of County Comm'rs*, 2002 WY 167, ¶ 13, 57 P.3d 1218, ¶ 13 (Wyo.2002) and *Newman v. State ex rel. Workers' Safety & Compensation Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, ¶ 12 (Wyo.2002)). We, therefore, hold that the findings of fact and conclusions of law of SBOE were not clearly contrary to the overwhelming weight of the evidence.

### C. Remaining Issues

[¶ 30] In an apparent last ditch effort, DOR argues both that SBOE improperly ruled on the distinction between "construction" and "maintenance" ballast, *sua sponte*, without providing DOR adequate notice and opportunity to address this issue and that SBOE made insufficient basic findings of fact to support this distinction.

[¶ 31] The record on appeal evidences that the distinction between "construction" and "maintenance" ballast was potentially raised as early as UPRC's Notice of Appeal wherein UPRC distinguished between ballast purchased in Wyoming for inventory purposes and ballast purchased for first use outside Wyoming. Likewise, some hint of this distinction is included in UPRC's filed Preliminary Statement. Undoubtedly, UPRC addressed this issue when it filed various required disclosure statements in this action. Indeed, UPRC specified that Mr. Steven Utech would be called to testify as a witness concerning efforts by UPRC to amend its contract with the vendor "so as to make clear that all ballast purchased after July 1, 1998, was FOB the location of delivery outside the State of Wyoming, so as to constitute destination sales." UPRC also specifically listed destination sales as an issue and then identified particular exhibits that would be used to address this issue in its filed Issues of Fact and Law and Exhibit Index and Updated Summary of Contentions. Evidence and witnesses regarding such issue were then presented and this issue was orally argued at hearing. Certainly while the record reflects that the most hotly contested issues in this matter related to the UPRC "authority," DOR was adequately appraised that UPRC intended to and did, in fact, raise the distinction between "construction" and "maintenance" ballast and that the "construction" ballast transactions at issue qualified as destination sales.

■ [¶ 32] In addition, while it is well established that an administrative agency must issue sufficiently detailed findings of fact to support its conclusions when rendering a determination,[6] our review of the final order in this matter establishes that SBOE satisfied this mandate. The Findings of Fact, Conclusions of Law, Decision and Order entered by the SBOE is seventeen pages in length and replete with detailed findings of fact and numerous citations to the administrative record. Moreover, the decision entered by SBOE specifically sets forth the basis and rationale for SBOE's determination that the subject purchases of "construction" ballast were not taxable events because they constituted destination sales.

### The UPRC "Authority"

■ [¶ 33] UPRC argues that while DOR may have meant to revoke the UPRC "authority," DOR never legally accomplished this goal because it failed to comply with the prerequisites for revocation. *See In the Matter of Appeal of Union Pacific Railroad Co.*, Wyoming Board of Equalization Docket Nos. 88–110 and 89–61 (1991) ("1991 Deci-

---

**6.** *See City of Casper v. Utech*, 895 P.2d 449, 451 (Wyo.1995); *Campbell County v. Wyoming County. College Comm'n*, 731 P.2d 1174, 1176 (Wyo. 1987) and *Holding's Little America v. Bd. of County Comm'rs of Laramie County*, 670 P.2d 699, 704 (Wyo.1983).

sion") along with *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647 (Wyo.1985); *Johnson v. Safeway Stores, Inc.*, 568 P.2d 908 (Wyo. 1977); *State ex rel. Lynch v. Bd. of County Comm'rs*, 75 Wyo. 435, 296 P.2d 986 (1956); *Hercules Powder Co. v. State Bd. of Equalization*, 66 Wyo. 268, 208 P.2d 1096 (1949); and *Mustanen v. Diamond Coal & Coke Co.*, 50 Wyo. 462, 62 P.2d 287 (1936), which each generally stand for the proposition that the retroactive application of either statutes or administrative rules and regulations are disfavored. In particular, UPRC asserts that DOR's alleged revocation of the UPRC "authority" was not prospective which resulted in UPRC receiving inadequate notice and that DOR failed to fully consider the impacts of revocation of the UPRC "authority" as mandated by the 1991 Decision. Accordingly, UPRC asserts that insufficient evidence exists to support SBOE's ruling that the UPRC "authority" was effectively revoked in this case.

### A. Sufficiency of the Evidence

[¶ 34] DOR issued a second Final Assessment dated November 15, 2000, to UPRC wherein sales taxes for ballast purchased in Wyoming before June 1, 1998 were removed from DOR's original assessment. At hearing it was explained that DOR issued this second Final Assessment in reliance on a letter dated April 29, 1998, from Joyce (Hron) Stewart of DOR to James Douglas of UPRC documenting DOR's revocation of the UPRC "authority." Further, Mr. Noble of DOR testified at hearing that he chose this date as DOR's effective revocation of this "authority" in order to give UPRC fair notice of the revocation.

[¶ 35] UPRC complains that the April 29, 1998 letter of Ms. Stewart does not state any date certain upon which the revocation would prospectively occur and did not mention June 1, 1998, as the effective date of revocation. UPRC also asserts that since it did not know until November of 2000 that DOR's revocation of the UPRC "authority" had allegedly occurred effective April 29, 1998, UPRC was not given adequate prospective notice of DOR's action. We find these complaints to be disingenuous.

[¶ 36] Our review of the record discloses that during a meeting on June 17, 1997, Ms. Burton of the DOR advised UPRC that DOR had no statutory authority to agree to the UPRC "authority" and that the UPRC "authority" would not be continued. In subsequent meetings between DOR and UPRC, DOR again expressed that the UPRC "authority" had been revoked. Counsel for UPRC, Mr. Douglas, participated in the June 17, 1997 meeting and a later January 1998 meeting. At hearing, Mr. Douglas admitted that DOR was "uncomfortable" with the mechanism permitted by the UPRC "authority" and knew "through body language" that DOR intended to revoke the UPRC "authority."

[¶ 37] UPRC acknowledged the revocation. Mr. Douglas, on behalf of UPRC, sent a letter to UPRC's lobbyist dated February 5, 1998, stating that DOR had "withdrawn its approval" for the UPRC "authority" because "DOR, with the concurrence of the Attorney General, believes there is no existing statutory authority to grant taxpayers special permission regarding the method taxes are to be paid." On March 12, 1998, the legislature enacted a direct pay statute, Wyo. Stat. Ann. § 39–15–107.1. During consideration of this legislation, UPRC lobbied for an amendment that would provide statutory authority for the UPRC "authority." However, the requested language suggested by UPRC was not included in Wyo. Stat. Ann. § 39–15–107.1. After the legislative session, DOR initiated a rule making process, amending its rules relating to this new legislation. UPRC provided written input and gave lengthy comments during the public hearing seeking to persuade DOR to include the UPRC "authority" in its amended rules. However, DOR declined this suggestion.

[¶ 38] On April 23, 1998, UPRC sent a letter to Ms. Stewart recognizing the UPRC "authority" had been revoked by DOR and had not been included within the newly enacted legislation. Nevertheless, UPRC requested that DOR reconsider its position and again allow the UPRC "authority." In this letter, UPRC stated: "We are willing to pay the tax to Wyoming, instead of other states, but we will do so only with your approval of

the use tax payment system for all materials purchased for use in Wyoming." DOR responded to this letter and its revocation of the UPRC "authority" was again confirmed via correspondence dated April 29, 1998. This letter unequivocally put UPRC on notice that the UPRC "authority" would not be honored by DOR stating:

> *I would also like to remind you of our position on the other type of transaction UPRC is routinely involved with in this state, the purchasing of ballast from Wyoming vendors. We have discussed this several times in the past but I think it worthy of another mention. When UPRC buys ballast in Wyoming, and the sale is finalized here, you owe the Wyoming sales tax on those transactions.* The sales tax should be paid to the vendor at the time of the purchase. However, under the newly created direct pay law, and once we have rules promulgated for same, UPRC can apply for a direct pay permit and make such sales tax payments directly to the state rather than to the ballast vendor.

(Emphasis added.) UPRC never responded to this letter or in any way indicated confusion over, or disagreement with, the statements made within this letter.

[¶ 39] In June of 1998, Mr. Douglas prepared a briefing paper for the Tax Reform 2000 Project initiated by the Wyoming legislature to be delivered by UPRC's lobbyist. A draft of this paper included the following paragraphs under the heading "Sales/Use Tax:"

> This tax is applied to transactions involving personal property. The railroad's principal personal property is locomotives and rail cars but there are no Wyoming

vendors selling rolling stock so rolling stock is purchased out-of-state and placed in interstate commerce before it arrives in the state. UPRR does purchase large amounts of rail, ties and ballast rock which are subject to tax. UPRR has paid use tax on all rail, ties and ballast rock installed in Wyoming even though major portions of this tax could have been paid to other states.

This choice of venue for paying sales/use tax led to the direct pay issue which was before the 1998 legislature. *The legislature elected not to renew UPRR's direct pay authority and as of July 1998, UPRR will no longer have a direct pay authority from the Department of Revenue.*

(Emphasis added.) A handwritten note to the side of the second paragraph asks the question: "Do we want to acknowledge that it is gone?" This document goes on to explain the UPRC "authority" (referred to as "direct pay authority") had worked for the past 20 years and acknowledges that UPRC needed such "authority" to purchase ballast in Wyoming sales tax free. Ultimately, the final version of the document contained the two above quoted paragraphs and the acknowledgment that UPRC needed the UPRC "authority" to purchase ballast in Wyoming sales tax free. However, the handwritten note was not included or in any other way incorporated into the final version.

[¶ 40] We hold that sufficient evidence was presented at hearing which supports SBOE's conclusion that UPRC was given adequate notice that DOR would no longer acknowledge the UPRC "authority" as of June 1, 1998.[7] For these same reasons, we

---

7. The record reflects that through his testimony at hearing Mr. Douglas attempted to address his letter to UPRC's lobbyist and the Tax Reform 2000 briefing paper by explaining that they were written in anticipation of the revocation occurring. Mr. Douglas also explained after acknowledging his participation in discussions during which the UPRC "authority" was at issue and admitting that it was DOR's position that sales tax was owed on all ballast purchases, that it was his interpretation that the UPRC "authority" was never revoked since he never heard the word "revocation." However, the SBOE in its decision specifically found that these statements

by Mr. Douglas lacked credibility. We have long recognized that the trier of fact is charged with weighing the evidence and determining the credibility of witnesses. Findings of fact are accorded deference, and a decision will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Brierley v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2002 WY 121, ¶ 16, 52 P.3d 564, ¶ 16 (Wyo.2002); *Newman v. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶¶ 26 and 31, 49 P.3d 163, ¶¶ 26 and 31 (Wyo.2002). As stated in *Newman*, at ¶ 26 (quoting *Wyoming*

decline UPRC's late request that we hold that UPRC is not liable for interest and penalty associated with the subject assessment. Again, the record supports the fact that UPRC was given adequate notice of DOR's intent to enforce the statutorily mandated sales tax for purchases made within Wyoming concerning UPRC.

### B. Mootness

[¶ 41] DOR in an interesting counter argument contends that it never possessed the statutory power to create a tax exemption by granting the UPRC "authority" and that it was constitutionally prohibited from releasing any tax liability under Article 3, § 40 of the Wyoming Constitution. DOR further argues that it therefore cannot be bound by the SBOE's decision rendered in the 1991 Decision, which, in essence, recognized the validity of the UPRC "authority."

[¶ 42] This court has often recognized that it will not entertain issues on appeal that are moot. This court recently stated in *Board of County Comm'rs for Sublette County v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 18, 55 P.3d 714, ¶ 18 (Wyo.2002) (citing *Davidson v. Sherman*, 848 P.2d 1341, 1348 (Wyo.1993)) that an issue is moot, and not reviewable on appeal, when an event occurs which makes a determination of the issues unnecessary. We also elaborated in *Wyoming Bd. of Outfitters & Professional Guides v. Clark*, 2002 WY 24, ¶ 9, 39 P.3d 1106, ¶ 9 (Wyo.2002):

> We stated in the case of *Smith Keller & Associates v. Dorr*, 4 P.3d 872, 876 (Wyo.2000) (citing *Bard Ranch Co. v. Frederick*, 950 P.2d 564, 566 (Wyo.1997)):
>
> > Our general law on justiciability provides that courts should not consider issues which have become moot. *Gulf Oil Corp. v. Wyoming Oil and Gas Con-*

*servation Comm'n*, 693 P.2d 227, 233 (Wyo.1985). We do not decide cases when a decision will have no effect or pertains only to matters that might arise in the future. *McLain v. Anderson*, 933 P.2d 468, 472 (Wyo.1997). A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy. *Id.* Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it. *Id.; see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911, 924–25 (Wyo.1989).

In *Sanchez v. State*, 982 P.2d 149, 150 (Wyo.1999), we further elaborated that a case is moot when the matter upon which a determination is sought presents no actual controversy or when a decision can have no practical effect. We have also recognized the general rule that the issue of mootness constitutes a question of law and may be properly addressed by a court sua sponte. *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1201 (Wyo.2000) (citing, in part, *Fund for Animals v. Babbitt*, 89 F.3d 128, 132 (2nd Cir.1996)); *see also Northern Utilities, Inc. v. Public Service Comm'n*, 617 P.2d 1079, 1085 (Wyo.1980).

[¶ 43] Having already held that sufficient evidence existed to support the determination of the SBOE that DOR had effectively given appropriate notice that it would no longer honor the UPRC "authority" from June 1, 1998 forward, any tangential constitutional or lack of statutory authority issues are rendered moot. Hence, we refuse to address these issues. Moreover, as support for this position, we have previously recog-

---

*Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 875 (Wyo.1994)):
> When factual findings are challenged, we will affirm those findings if they are supported by substantial evidence.
> In contested cases conducted before administrative agencies, the deference that normally is accorded the findings of fact by a trial court is extended to the administrative agency, and we do not adjust the decision of the agency unless it is clearly contrary to the overwhelming

weight of the evidence on record. *Mekss [v. Wyoming Girls' School, State of Wyoming,* 813 P.2d 185 (Wyo.1991)]; *State ex rel. Wyoming Workers' Compensation Div. v. Brown,* 805 P.2d 830 (Wyo.1991). This is so because, in such an instance, the administrative body is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses. *Gilmore v. Oil and Gas Conservation Comm'n.,* 642 P.2d 773 (Wyo.1982).

nized, "[a]s is our practice, we will not address constitutional issues if we resolve a case on other grounds." *In re LePage,* 2001 WY 26, ¶ 18, 18 P.3d 1177, ¶ 18 (Wyo.2001) (citing *State Highway Comm'n v. Sheridan–Johnson Rural Electrification Ass'n,* 784 P.2d 588, 591 n. 4 (Wyo.1989)). *In accord, Umbach v. State,* 2002 WY 42, ¶ 14, 42 P.3d 1006, ¶ 14 (Wyo.2002).

### CONCLUSION

[¶ 44] We affirm the actions of the SBOE in determining that the purchase of "construction" ballast at issue in this case does not constitute a taxable event in Wyoming and that UPRC was given sufficient notice that the UPRC "authority" would no longer be recognized by DOR after June 1, 1998.