2007 WY 43

**CHEVRON U.S.A., INC., Appellant (Petitioner),**

v.

**DEPARTMENT OF REVENUE, State of Wyoming, Appellee (Respondent).**

**No. 06–50.**

Supreme Court of Wyoming.

March 14, 2007.

Representing Appellant: William J. Thomson II, Randall B. Reed, Brian J. Hanify, and Gregory C. Dyekman of Dray, Thomson & Dyekman, P.C., Cheyenne, Wyoming. Argument by Mr. Dyekman.

Representing Appellee: Patrick J. Crank, Attorney General; Michael L. Hubbard, Deputy Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General; and Karl D. Anderson, Senior Assistant Attorney General. Argument by Mr. Anderson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] The State Board of Equalization (SBOE) denied Chevron U.S.A., Inc.'s (Chevron) appeal from a notice of valuation (NOV) for its Carter Creek natural gas production, concluding it had no jurisdiction because the appeal was filed more than thirty days after the Department of Revenue (DOR) decision was postmarked, in contravention of Wyo. Stat. Ann. § 39–14–209(b)(iv) (LexisNexis 2005).[1] Chevron claimed the state's postage meter stamp was not a "postmark" as provided by the statute, and thus, its time for appeal had not expired because the thirty day period had not been triggered. Chevron petitioned the district court for review of the SBOE decision, and the district court affirmed the agency's findings and conclusions.

---

1. Originally, this case was consolidated with another appeal, Docket No. 06–51, which challenged the SBOE order dismissing, as untimely, Chevron's appeal of the NOV for its Whitney Canyon natural gas production. The DOR's selection of the comparable value method for production from Whitney Canyon for the years 2000–2002 was affirmed by this Court in *BP Am. Prod. Co. v. Dep't of Revenue, State of Wyo.*, 2005 WY 60, 112 P.3d 596 (Wyo.2005), reh'g denied July 6, 2005. Chevron voluntarily dismissed its appeal in Docket No. 06–51 on October 10, 2006.

Chevron then filed a timely appeal of the district court's decision to this Court. We hold the SBOE properly interpreted the applicable statute and dismissed Chevron's appeal for lack of jurisdiction, and, therefore, affirm.

## ISSUES

[¶2] Chevron presents the following issues on appeal:

1. Did the Wyoming State Board ·of Equalization err, as a matter of law, by concluding that a private postage meter stamp was a "postmark," as that term is used in Wyo. Stat. Ann. § 39–14–209(b)(iv) and in the Board's rules and regulations?

2. Was Chevron, U.S.A., Inc., denied due process by the Board of Equalization's refusal to accept Chevron's appeal?

3. Did the Board of Equalization fail to observe procedures required by law?

The DOR phrases the issue as:

[Was] appellant's [ ] administrative tax appeal[ ] properly dismissed due to [its] untimely filing[ ]?

## FACTS

[¶3] In 2003, Chevron produced natural gas from its Carter Creek field in Uinta County, Wyoming. Pursuant to Wyoming's self-reporting mineral tax system, Chevron reported its production and determined the value of that production using the proportionate profits method, one of the methods authorized by § 39–14–203(b)(vi). The DOR reviewed Chevron's report, concluded a different method of valuation was appropriate for Chevron's circumstances and issued an NOV based on the comparable value method, also authorized by the statute. The NOV was. dated May 24, 2004, and sent to Chevron's Houston, Texas address in an envelope bearing a stamp dated May 25, 2004, from the state's "Pitney Bowes" postage meter. On June 30, 2004, thirty-six days later, Chevron filed a notice of appeal with the SBOE challenging the NOV.

[¶4] Section 39–14–209(b)(iv) requires that the DOR notify the taxpayer of the assessed value by mail and allows the taxpayer to object to the DOR's notification "within thirty (30) days of the date of postmark...." In addition, § 39–14–209(b)(i) provides all appeals to the SBOE "shall be made in a timely manner as provided by rules and regulations of the board...." The rules adopted by the SBOE require taxpayers to file any objections within thirty days of the final decision or the date the final administrative decision is mailed as evidenced by a postmark, whichever is later. *Rules, Wyoming State Board of Equalization,* Ch. 2, § 5(e) and (f). Concluding the appeal had not been filed within the thirty day time limit established by § 39–14–209(b)(iv) and the rules, the SBOE issued a notice indicating its intent to dismiss it for lack of jurisdiction unless either Chevron or the DOR filed a written objection. Chevron filed an objection on July 19, 2004, and the matter was.set for hearing on July 22, 2004.

[¶5] At the hearing, Chevron contended the statute and the SBOE rules required that an appeal be filed thirty days after the NOV was "postmarked" and a private postage meter stamp did not constitute a "postmark" as intended by the legislature. Consequently, Chevron asserted the time for appeal had not been triggered when the DOR mailed the NOV utilizing the state's private postage meter. Chevron introduced into evidence the envelope in which the NOV had been sent with a Pitney Bowes stamp date of May 25, 2004, and a Chevron stamp indicating receipt on June 2, 2004, eight days later.

[¶6] In addition, Chevron called DOR employee, Pat Parsoneault, who was responsible for issuing the NOV. He described the agency's procedure for processing NOVs, which included placing them in the DOR mailroom the day after they were approved to be picked up by the state's central mail system. Mr. Parsoneault testified it was his understanding that the central mail office placed the postage meter stamp on the mail items and placed them in the U.S. postal system. He also testified the DOR had utilized this process during the entire sixteen years he had been employed by the agency; he was unaware of any time the state's central mail system did not put the mail into the U.S. postal system; and he had no knowledge of anyone from the DOR ever asking the state's central mail system to hold back

any items which had been mailed. Chevron submitted no evidence and made no contention suggesting either the DOR or the state central mail service had improperly delayed depositing the NOV in the U.S. postal system. In response to a board member's comment, Chevron agreed the eight day period between May 25 and June 2 included a three day weekend occasioned by a national holiday when the U.S. Postal Service (USPS) did not deliver mail.

[¶ 7] The DOR did not dispute that Chevron received the NOV on June 2, eight days after it was mailed. Instead, the DOR simply contended the statutory term "postmark" includes the stamp made by the private postage meter utilized by the state; Chevron did not file its appeal within thirty days of the postage meter date; and, consequently, the SBOE had no jurisdiction to consider the appeal. After the hearing, at the SBOE's request, Chevron filed affidavits describing how incoming mail is handled in its offices and stamped on the date of receipt. The SBOE dismissed Chevron's appeal reasoning that "postmark," as the term is used in § 39-14-209(b)(iv), includes a private postage meter stamp.

[¶ 8] Contending the hearing had been unfair because the DOR had filed no pleadings indicating its legal position prior to the hearing and Chevron, therefore, had been unable to respond to its arguments, Chevron filed a petition for reconsideration. In addition, Chevron requested an opportunity to provide additional evidence in response to the SBOE order's reference to the lack of any evidence showing the normal time for mail delivery from Cheyenne, Wyoming to Houston, Texas. Finding no irregularity in the proceedings, the SBOE denied the petition for reconsideration. Chevron petitioned the district court for review of the SBOE order, and the district court affirmed the SBOE. Chevron appealed to this Court.

## STANDARD OF REVIEW

[¶ 9] Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2005) governs judicial review of administrative decisions. *State ex rel. Dep't of Revenue v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 5, 18 P.3d 1182, 1185 (Wyo.

2001); *Everheart v. S & L Indus.,* 957 P.2d 847, 851 (Wyo.1998). Questions of statutory interpretation are matters of law and are reviewed *de novo. Powder River Coal Co. v. Wyo. Dep't of Rev.,* 2006 WY 137, ¶ 9, 145 P.3d 442, 446 (Wyo.2006); *Wyo. Dep't of Revenue v. Guthrie,* 2005 WY 79, ¶ 13, 115 P.3d 1086, 1091 (Wyo.2005).

## DISCUSSION

[¶ 10] To resolve this matter, we must interpret the statutory term "postmark." In doing so, we strive to give effect to the intent of the legislature. We look first to the plain meaning of the language chosen by the legislature and employ well-accepted rules of statutory construction if that language is ambiguous or capable of varying interpretations. *Powder River Coal Co. v. Wyoming State Bd. of Equalization,* 2002 WY 5, ¶ 6, 38 P.3d at 426 (Wyo. 2002).

[¶ 11] The term "postmark" is not defined in the statute. The plain meaning of the term connotes a mark placed on a mailed item. Black's Law Dictionary defines the term as "an official mark put by the post office on an item of mail to cancel the stamp and to indicate the place and date of sending or receipt." *Black's Law Dictionary* 1205 (8th ed.2004). *Webster's New World Dictionary* 113 (2d ed.1986) similarly defines the term as "a post-office mark stamped on a piece of mail, canceling the postage stamp and recording the date and place of sending or receiving." The DOR argues, and the SBOE reasoned, that a private postage meter stamp meets these definitions of "postmark" when considered in accordance with USPS regulations and guidelines.

[¶ 12] USPS publications do not contain any definition of the term "postmark;" however, they do explain how privately metered mail is authorized and regulated. *See United States Postal Service Domestic Mail Manual,* § 604 *et. seq. (Manual)* (updated February 2, 2006, 39 C.F.R. §§ 111.1-111.5 (1991)); and *United States Postal Service Glossary of Postal Terms* 71, 86. The USPS licenses private parties to use postage meters manufactured by certain companies, including Pitney Bowes, Inc., to place a mark on

mailed items indicating postage has been paid, provided the licensees agree to abide by all the rules and regulations governing the use of the meters. *Manual,* §§ 142.2, 604.2. The purpose of the mark imprinted by the USPS on mailed items canceling government-issued postage stamps is also to insure postage has been paid (i.e. the stamp has not been used more than once).[2]

[¶ 13] We recently explained the analysis required in determining whether a particular statute is ambiguous as follows:

> We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. [*State ex rel. Wyo. Dept. of Revenue v. UPRC,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003) ]. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. *Petroleum Inc. v. State ex rel. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo.1999).
>
> We have recognized that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but is not conclusive. *UPRC,* ¶ 12, 67 P.3d at 1182–83. . . . Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *UPRC,* ¶ 12, 67 P.3d at 1183.

*RME Petroleum Co. v. Wyo. Dep't of Revenue,* 2007 WY 16, ¶¶ 25, 28, 150 P.3d 673, 683–84 (Wyo.2007).

[¶ 14] The statute in question in this case fails to define the term "postmark." Reasonable interpretations can vary because, while some definitions seem to require a post office postmark, the USPS—the "post office" referred to in those definitions—authorizes both marks and considers marks made by private postage meter stamps to have the same effect as post office cancellation marks.

*See, Bd. of County Comm'rs of the County of Laramie v. City of Cheyenne,* 2004 WY 16, ¶ 20, 85 P.3d 999, 1005–06 (Wyo.2004) (holding that use of words without defining them rendered statute ambiguous when dictionary definitions showed different reasonable interpretations of the words); *Lance Oil & Gas Co. v. Wyo. Dep't Of Revenue,* 2004 WY 156, ¶ 20, 101 P.3d 899, 905 (Wyo.2004) (holding the term "producer," as used in a mineral tax statute, was ambiguous because its meaning was uncertain as it was "susceptible to more than one interpretation").

[¶ 15] We hold the term "postmark" as used in § 39–14–209(b)(iv) and the SBOE rule is capable of different meanings, and is, therefore, ambiguous. Consequently, we must look beyond the specific language of the statute and apply the rules of statutory construction to determine the legislature's intent.

> When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983). *See also Pagel v. Franscell,* 2002 WY 169, 57 P.3d 1226 (Wyo. 2002); *Rodriguez v. Casey,* 2002 WY 111, 50 P.3d 323 (Wyo.2002), *U.P. v. Trona Valley,* 2002 WY 165, 57 P.3d 1203 (Wyo.2002).

[¶ 16] Looking first at the "mischief" the legislature was attempting to address when the statute was adopted, it is indisputable the legislature has the prerogative to decide when to authorize administrative appeals and to establish the procedures applicable to such appeals. *Basin Electric Power Co-op., Inc. v. Dep't of Revenue,* 970 P.2d 841, 847 (Wyo.1998); *Holding's Little America v. Board of County Comm'rs of Laramie County,* 670 P.2d 699, 702 (Wyo.

---

**2.** Cancellation: A mark placed on a stamp by a postal authority to show that it has been used.

*www.USPS.com/shop/glossary/htm.*

1983). When the legislature first created the right to object to the issuance of an NOV, it provided such objection had to be filed "within fifteen days following receipt of the notice...." Wyo. Stat. Ann., § 39–2–201(d) (Michie 1977). In 1989, the statute was amended to require objections to be filed within thirty days of receipt of the notice. Wyo. Stat. Ann. § 39–2–201(d) (Michie 1989) (codifying Wyo. Laws 1989, ch. 90, § 1, effective July 1, 1989). The statute did not require the NOV to be sent by registered mail nor did it address how the date of receipt was to be confirmed. In 1990, the statute was again amended and, for the first time, the legislature required objections to be filed within thirty days of the postmark. Wyo. Stat. Ann. § 39–2–201(d) (Michie 1990) (codifying Wyo. Laws 1990, ch. 46, § 1, effective immediately upon completion of all acts necessary for a bill to become law as provided by art. 4, § 8, Wyo. Const., approved March 19, 1990).

[¶ 17] We have no legislative history indicating specifically why the legislature changed the manner of determining when the time for filing objections began to run, but it seems likely the legislature wanted to eliminate the possibility for dispute that existed with an unverified "date of receipt" as the trigger for the appeal period. The only way to verify that date was to require the NOV to be mailed certified with a return receipt requested. The administrative and financial burden of handling large numbers of NOVs in that fashion would have been obvious. In the end, the legislature chose the date the NOV was postmarked indicating it was mailed and postage was paid. This approach did not place upon the DOR the burden of using certified mail, and, at the same time, assured a date certain for the thirty day period to begin to run that would give the taxpayer adequate time in which to prepare its appeal. We have no difficulty concluding a stamp imposed by a private postage meter provides a date certain to trigger the appeals period in exactly the same manner as the cancellation stamp imposed by the USPS.

This approach did not, however, guarantee the taxpayer would have a full thirty days in which to appeal, but something short of that, depending on the time it took the mail to be delivered to the taxpayers. *See Antelope Valley Improvement and Serv. Dist. v. State Bd. of Equalization,* 992 P.2d 563 (Wyo.1999) ("A rule that provides thirty days after the date of the decision to file an appeal does not entitle the recipient to file the appeal thirty days after actual notice of the decision").

[¶ 18] The requirement that an appeal be filed within thirty days of the postmark has been in effect since 1990. Wyo. Stat. Ann. § 39–2–201(d) (Michie 1990). We know from the record that the DOR has relied upon the state's central mail system, which uses a Pitney Bowes private postage meter, to mail all of its NOVs for at least sixteen years prior to issuance of Chevron's NOV in this matter. Statutes authorizing the state's central mail system have been in effect for much longer.[3] We can presume the legislature was aware, at the time it adopted the statutory requirement for appealing within thirty days of the "postmark," that mail sent by state administrative agencies, including the DOR, passed through the state's central mail system and its licensed postage meters. *Qwest Corp. v. State ex rel. Wyo. Dep't of Revenue,* 2006 WY 35, ¶ 8, 130 P.3d 507, 511 (Wyo.2006) (recognizing that in interpreting an ambiguous statute, we look at the historical setting surrounding the enactment). If the legislature intended NOVs to be mailed in a different fashion than the DOR was using at the time the statute was amended, it would have so specified. *Stutzman v. Office of the State Eng'r,* 2006 WY 30, ¶¶ 14–16, 130 P.2d 470, 475 (Wyo.2006). Similarly, in this historical context, if the legislature did not intend to include postage meter marks within the definition of postmark, it would have stated so specifically. Any other interpretation produces the absurd result that either all NOVs mailed by the DOR in the ordinary course of business, using the central mail postage meter, were not subject to any deadline for objections, or the DOR

---

**3.** § 9–2–1016(b)(xvi) and its predecessor statute have authorized the operation of the state's cen-tral mail service since at least 1982.

had to change its method of mailing NOVs without any specific statutory direction to do so. We will not interpret a statute in a manner that produces absurd results. *Id.*

[¶ 19] We know from reviewing numerous Wyoming statutes that when the legislature desires an agency to establish proof of actual mailing of a notice and the date thereof, it requires the agency to send the notice by certified or registered mail. *See, e.g.,* Wyo. Stat. Ann. § 11–34–123 (LexisNexis 2005) (providing farm loan board must give mortgagor notice of delinquency by certified mail); Wyo. Stat. Ann. § 14–3–214 (LexisNexis 2005) (providing notice of investigation or substantiated finding of child abuse or neglect must be sent by certified mail); Title 33 of the Wyoming Statutes Annotated (containing numerous statutes requiring professional licensing boards to give notice of the intent to revoke or suspend a professional license by certified mail). As we discussed above, the legislature chose not to impose that requirement on the DOR for service of NOVs. Therefore, we have no trouble concluding that the legislative intent was to simply provide a date certain for the beginning of the appeals period, and because the state's private postage meter stamp does that just as well as a stamp affixed by the USPS, it constitutes a "postmark" for the purposes of § 39–14–209(b)(iv).

[¶ 20] Our reasoning is consistent with the majority of courts in other jurisdictions that have considered this issue. *See Board of County Comm'rs of Laramie County,* 85 P.3d at 1007–08 (using cases from other jurisdictions to assist in interpretation of an ambiguous statute). In general, those courts have concluded private postage meter stamps are equivalent to a USPS cancellation because the regulatory scheme governing those meters gives them the same effect and assures their reliability. Concluding a private postage meter stamp constituted a postmark under a statute establishing the deadline for an employer to file objections to unemploy-

ment benefits, the Colorado Supreme Court stated:

[U]nder United States Postal Service regulations, **private postage meter marks** are official **postmarks** imprinted under license from the Postal Service. Privately metered mail is entitled to all the privileges applying to the various classes of mail, and such mail is not canceled or postmarked by the Postal Service unless incorrectly dated. See 39 C.F.R. 111.1–111.5 (1991); United States Postal Service Domestic Mail Manual §§ 144.111, 144.2, 144.471, 144.532; 144.534 (1991); *Bowman v. Administrator,* 30 Ohio St.3d 87, 507 N.E.2d 342 (1987).

*Gutierrez v. Industrial Claim Appeals Office,* 841 P.2d 407, 408 (Colo.Ct.App.1992).

[¶ 21] In *Bowman v. Administrator,* 30 Ohio St.3d 87, 507 N.E.2d 342, 344 (1987), the court stated that private postage meter stamps are presumed to be reliable because they are subject to USPS regulations and guidelines:

Private meter postmarks are official postmarks imprinted under license from the United States Postal Service (DMM Section 144.2), and metered mail is entitled to all privileges applying to the various classes of mail. (DMM Section 144.111.) The United States Postal Service requires the date shown on private meter postmarks to be the actual date of deposit of mail (or the next scheduled collection day). (DMM Section 144.471.) n3 If the wrong date appears, a .00 postage meter impression with the correct date is stamped on the envelope by the post office. Otherwise, metered mail is not canceled or postmarked by the Postal Service. (DMM Section 144.534.) n4 Although metered mail is subjected to only random, selective samplings to detect misuse of meters (under DMM Section 144.61), n5 such samplings and the sanction of license revocation (DMM Section 144.23) n6 discourage misuse of postmark meters.[4]

4. These provisions of the USPS regulations and guidelines make it clear the USPS expects metered mail to be deposited on the date indicated in the stamp or "indicium". While the possibility exists that privately metered mail deposited with the USPS after the last scheduled collection will not enter the mail system until the next day and may still bear the prior day's date, the record herein contains no indication, and Chevron makes no allegation, that such a delay occurred in this instance. *See* Charles Pomeroy Collins, *The Validity of Postmarks,* 47 ABA Journal, 371

(footnotes in original omitted). *See also Frandrup v. Pine Bend Warehouse*, 531 N.W.2d 886 (Minn.Ct.App.1995) (holding a statute requiring "cancellation mark" of USPS includes USPS cancellation and private postage meter stamp because both show the item passed through the postal system on the day indicated and common sense suggests both are postmarks); *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338 (Mo.1991) (finding the statutory language ambiguous because it was susceptible to several meanings and concluding a private postage meter stamp sufficient when statute required mail to be "endorsed by U.S. Post Office"); *Haynes v. Hechler*, 182 W.Va. 806, 392 S.E.2d 697 (1990) (holding a private postage meter postmark was presumptively valid and accurate for the purposes of W.Va.Code, 3–5–7 (1985)); *Headrick v. Jackes–Evans Mfg. Co.*, 108 S.W.3d 114 (Mo.Ct.App.2003) (finding metered mail postmarks inscribed on an envelope by a postage meter licensed by the USPS sufficient to satisfy the statutory requirement of a date endorsed by the United States post office); *Severs v. Abrahamson*, 255 Iowa 979, 124 N.W.2d 150 (Iowa 1963) (concluding legislature intended "postmark" to include both USPS and private meter stamps). While we recognize a few courts have reached a different result, they have done so without discussing the USPS regulations and their assurance of reliability and fail to even mention legislative intent. *Lin v. Unemployment Comp. Bd. of Review*, 558

Pa. 94, 735 A.2d 697, 698–99 (1999); *Upper Allegheny Joint Sanitary Authority v. Commonwealth of Penn., Dept. of Envtl. Res.*, 130 Pa.Cmwlth. 106, 567 A.2d 342, 345 (1989).

[¶ 22] We are persuaded the majority view is consistent with what we discern as our legislature's intent. As we explained above, we do not undertake statutory construction in a vacuum. The use of private postage meters is pervasive now, and was so when the statutory language referring to the "postmark" was added. That fact must be presumed to have been well known by the legislature. Federal legislation authorizing private postage meters has been in effect since 1920 and, as long ago as 1961, forty-five percent of all mail in this country and half of the business mail was processed by private meters. *Severs*, 124 N.W.2d at 151. We note even Chevron, during the course of this litigation, served its pleadings using its private postage meter. We simply are not convinced the legislature intended to change the way the state and the taxpayers handled their business communication when it established a deadline for filing objections to an NOV; instead, we believe it intended to establish a firm date for triggering the time within which objections must be filed and understood a private postage meter stamp does that just as effectively as a USPS cancellation mark.[5]

[¶ 23] Chevron directs our attention to cases holding that tax statutes, if

(April 1961) for an explanation that even USPS postmarks are not, and were never intended to be, proof of the actual date of mailing, but rather only had the purpose of canceling the postage to prevent reuse. Instead, certified or registered mail is the USPS vehicle for proving the actual date of mailing.

5. The value of postmark as evidence of the date of mailing has also been discussed in other contexts. For example, a postmark may be evidence to establish proof of mailing under the "mailbox rule" of contract law which provides, "unless otherwise agreed to or provided by law, an offer is accepted when the acceptance is properly addressed and placed in the mail." *Stang v. McVaney*, 2002 WY 53, ¶ 11, 44 P.3d 41, 45 (Wyo. 2002). The issue in that context is evidentiary in nature and, therefore, those cases are not directly controlling with regard to legislative intent. Although there are not many cases discussing the effect of a postage meter stamp on the evidentiary question of when a mailing was made for

purposes of the "mailbox rule," *Ellefson v. Megadeth, Inc.*, 2005 WL 82022 (S.D.N.Y.2005), did address the issue and concluded the private postage meter stamp by a major law firm was sufficient evidence of the date the acceptance was mailed and that a receipt date stamp was much more susceptible to being "manufactured" than a private postage meter stamp. Ironically, the mailed item at issue in that case was delivered from California to Minnesota thirteen days after it was mailed over the Memorial Day holiday. For an interesting discussion of the evidentiary value of postmarks by USPS and private postage meters, see Collins, supra. Of course, should a private postage meter date be inconsistent with the USPS date, the USPS date will prevail. *Texas Beef Cattle Co. v. Green*, 862 S.W.2d 812 (Tex.Ct.App.1993) (applying the Texas "mailbox rule" for filing court documents). This principle is consistent with the USPS regulations recited above.

ambiguous, must be interpreted in favor of the taxpayer. Chevron contends this maxim requires interpreting § 39–14–209(b)(iv) to mandate a USPS cancellation stamp on all NOVs before the thirty day appeal period can be triggered. However, an examination of the cases applying the maxim makes it clear the focus was on statutes involving imposition of a tax, not procedural statutes governing administration of tax appeals.

[¶ 24] In one of the first cases to articulate the rule, *Kelsey v. Taft*, 72 Wyo. 210, 217, 263 P.2d 135, 137 (Wyo.1953), this Court, in the context of whether certain property was subject to an inheritance tax, explained:

It is elementary that taxation is a legislative function and that taxes may be impressed, levied, assessed and collected only under the statutory authority and in the manner provided by law. The power of the taxing officials exists only by virtue of the statutes empowering them to act and can be exercised only within the express authority conferred. See 51 Am.Jur., 'Taxation', § 44, p. 74. Even were this not the general law, the provisions of the Wyoming Constitution, Article 15, Section 13, establishes a rule which is probably controlling and, in any event, provides an essential background for our analysis:

"No tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Compilations of legal precedents are replete with dissertations of courts, specifically and definitely prohibiting the effectuation of any tax measure by any means other than a clear, definite and unambiguous statement of the legislative authority. Many state and federal cases could be cited on the subject but none is more succinct and positive than *Gould v. Gould*, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211, in which the Court says:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by [72 Wyo. 220] implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

[¶ 25] Virtually all of the cases following *Kelsey* similarly involved interpreting statutes to determine whether a particular property or transaction was subject to taxation or the amount of taxes due, rather than interpreting statutes prescribing the procedures for objecting to an agency's taxation decision. *See, e.g., Amoco Prod. Co. v. Dep't of Revenue*, 2004 WY 89, ¶ 18, 94 P.3d 430, 438 (Wyo.2004); *Estate of Heckert v. State Bd. of Equalization*, 15 P.3d 216, 220–21 (Wyo. 2000); *Chevron v. State*, 918 P.2d 980, 984 (Wyo.1996); *Luman v. Resor*, 406 P.2d 527, 529–30 (Wyo.1965).[6] Our discussion of the proper role of the rule of strict construction of tax statutes in *BHP Petroleum Co., Inc. v. State of Wyo. Tax Comm'n*, 784 P.2d 621 (Wyo.1989), is noteworthy. In that case, we refused to apply the rules of strict construction applicable to taxation statutes when we were asked to decide which of two possible taxpayers should pay but were not required to decide whether a taxation responsibility existed or its amount. *Id.* at 626. Similarly, we will not apply the rule of strict construction to interpret the procedural requirements for perfecting an appeal from an NOV. Instead, our focus when interpreting statutory procedures for notifying a taxpayer of a tax decision must be upon the legislative intent expressed in the statutory language.

[¶ 26] Chevron's failure to provide any evidence that USPS stamped mail would have likely been received by a taxpayer over the holiday period any faster than the privately metered mail also undermines its posi-

**6.** In *Board of County Comm'rs for Sublette County v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 32, 55 P.3d 714, 723 (Wyo.2002), we referred to the *Kelsey* rule, which states that tax statutes are construed in favor of the taxpayer, in deciding whether the county had the power to appeal a DOR mineral tax assessment. The discussion in that case suggested the rule of strict construction applies to tax procedural matters as well as to the imposition of taxes. However, the rule of strict construction for tax statutes was not singularly controlling in that case. Instead, we also relied upon the principle of strict construction because we were construing a statute delegating power from the state to the counties. *Id.*, ¶ 33, 263 P.2d 135, 55 P.3d at 723.

tion. Without that evidence, it cannot claim that requiring a USPS postmark would always benefit the taxpayer. Certainly, Chevron would benefit in this case if we held the thirty day deadline was never triggered. However, the maxim that ambiguous tax statutes must be interpreted in favor of the taxpayer does not mean the taxpayer should win any procedural argument it presents. In fact, the cases cited above from other jurisdictions which held the statutory term "postmark" includes private postage meter stamps, actually favored the individual filing with a state agency. It would be unwise to vary the interpretation of procedural statutes depending on whether, in a particular scenario, it benefited the government or the taxpayer.

 [¶ 27] Fairness and due process are the only constraints upon the legislature when establishing procedural requirements. *See, Antelope Valley*, 992 P.2d at 567. In that regard, Chevron complains the SBOE violated its due process rights in two different ways. First, without citing any authority, Chevron argues W.R.A.P. 2.01, which allows a trial court to grant an extension for the filing of a notice of appeal upon a showing of excusable neglect, somehow applies to the SBOE.[7] Chevron continues by implying the SBOE's failure to grant such an extension constituted a denial of due process. We find no merit in this argument which presumes the SBOE had the jurisdiction and discretion to grant an extension from the statutory deadline for filing an appeal of an NOV. Section 39-14-209(b)(iv) provides no such discretion and allows the SBOE to consider appeals only if they are timely filed. Even if its legal position had merit, Chevron provided no facts to support a finding of excusable neglect, e.g. undue delay in the delivery of the mail. Instead, standing the applicable burden of proof on its head, Chevron contends it was the DOR's burden to prove there was no undue delay in the delivery of the mail. The SBOE's dismissal of

Chevron's untimely appeal in compliance with the statute did not constitute a denial of due process.

[¶ 28] Second, Chevron contends its right to due process was violated because it did not have an adequate opportunity to respond to the arguments the DOR presented at the hearing or the legal reasoning set forth in the SBOE's written order. In considering this issue, the chronology of this proceeding is important. Chevron received the NOV with the private postage meter stamp on June 2, 2004, and filed its objection on June 30, 2004. The SBOE issued its notice of intent to dismiss the appeal with prejudice to both the DOR and Chevron on July 2, 2004. On July 19, 2004, seventeen days after receipt of that notice and over six weeks after receipt of the NOV, Chevron filed a written response including its legal arguments that the private postage meter stamp was not a postmark and the SBOE should allow a late filing of the appeal because of an alleged delay in the mail. The applicable rules did not require the DOR to respond to Chevron's arguments.

[¶ 29] The following day, July 20, 2004, the SBOE set the matter for hearing on July 22, 2004. At the hearing, after Chevron presented its case, counsel for the DOR presented oral argument, but filed no pleadings and introduced no evidence. At the end of the hearing, the SBOE invited Chevron to submit an affidavit concerning the date it received the NOV. On July 29, 2004, Chevron submitted two affidavits, one by an employee responsible for receipt of the mail, and one from a Pitney Bowes employee responsible for delivering Chevron's mail from the post office box to the company's offices. The SBOE issued its order on August 16, 2004, affirming the dismissal and explaining its reasoning and its interpretation of the statute.

[¶ 30] After receipt of the order, Chevron filed a petition for reconsideration in which,

---

7. Chevron cites as support footnote 9 in the dissent in *Dep't of Revenue & Taxation v. Irvine*, 589 P.2d 1295 (Wyo.1979), which states "a remedial extension of time is and always has been available where some real or apparent breakdown in the procedure has occurred. . . .

W.R.A.P. 2.01." The holding affirmed the dismissal of a late appeal of a driver's license suspension and did not involve excusable neglect. This case provides no authority for application of W.R.A.P. 2.01 to SBOE proceedings.

for the first time, it complained it had not had the opportunity to respond to the DOR's arguments and, based upon comments in the order, requested an additional opportunity to present evidence, primarily on the issue of the normal time for mail delivery between Houston and Cheyenne. The DOR objected to the petition claiming Chevron was improperly seeking an opportunity to reargue the case. The SBOE denied the petition finding there had been no irregularity in the proceedings, and Chevron had been given a full and fair opportunity to present its arguments and was not entitled to respond to the legal authority cited in the SBOE's order.

[¶ 31] Having fully reviewed the record in this case, we agree the proceedings provided Chevron adequate opportunity to present its case and conclude there was no denial of due process. Chevron had notice of the hearing, filed no objection to the timing of the hearing, presented an opening statement outlining the legal arguments it had raised in its written objection to the dismissal, including some of the same authority it cites on appeal, and called a DOR employee to testify. Without objection, the DOR appeared through its counsel who cross-examined the sole witness and made a brief statement, constituting approximately 5 of the 101 pages of transcript, without citing to any legal authority other than the applicable statutes. Chevron then made a closing statement. At no time prior to, during, or after the hearing did Chevron object to the DOR's participation or ask for additional time to present more evidence or legal argument. Not until the SBOE order was issued containing its legal analysis, responding in part to the authority Chevron submitted in its written objections, did Chevron ask to present more evidence and argument. Due process requires only reasonable notice and opportunity for a fair hearing. *Amoco Prod. Co. v. Wyo. State Bd. of Equalization*, 7 P.3d 900, 905 (Wyo.2000); *Antelope Valley Improvement and Serv. Dist.*, 992 P.2d at 567. We hold Chevron was provided with due process as required by law.

## CONCLUSION

[¶ 32] The SBOE mailed the NOV on Tuesday, May 25, 2004, in the ordinary course of its business using the state's central mail system and a private postage meter. Chevron presented no evidence indicating the mail was not handled in the same manner as all of the DOR's correspondence and mailed on the day it was stamped. Chevron received the NOV on Wednesday, June 2, 2004. The intervening time included a national holiday during which mail was not delivered. We conclude the NOV was postmarked, as provided by § 39–14–209(b)(iv), when marked by the postage meter, and that Chevron's appeal was due June 28, 2004. Chevron's appeal, filed on June 30, 2004, was not timely; consequently, the SBOE had no jurisdiction to consider it and acted properly in dismissing it. We further conclude Chevron had a full and fair opportunity to present its arguments in opposition to the dismissal of its appeal. We affirm the district court's order affirming the SBOE's order dismissing the appeal.