# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 56

**APRIL TERM, A.D. 2014**

**May 5, 2014**

IN THE MATTER OF A VIOLATION OF THE
WYOMING RESIDENTIAL MORTGAGE
PRACTICES ACT BY CALCON MUTUAL
MORTGAGE CORPORATION:

CALCON MUTUAL MORTGAGE CORP.,

Appellant
(Petitioner),

No. S-13-0130

v.

STATE OF WYOMING, ex rel., WYOMING
DEPARTMENT OF AUDIT, DIVISION OF
BANKING,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
   *James R. Salisbury and Anthony M. Reyes, Riske & Salisbury, Cheyenne, Wyoming. Argument by Mr. Salisbury.*

*Representing Appellee:*
   *Peter K. Michael, Attorney General; Martin L. Hardsocg, Deputy Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General. Argument by Mr. Schelhaas.*

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]    The Wyoming Department of Audit, Division of Banking (Division) conducted a compliance examination of Appellant, CalCon Mutual Mortgage Corporation (CalCon), and determined that, in six separate brokering transactions, CalCon had received application fees and "yield spread premiums" exceeding those previously disclosed to its customers in violation of the Wyoming Residential Mortgage Practices Act.    The Division sought reimbursement of the fees charged in those transactions.    CalCon objected and the matter was referred to the Office of Administrative Hearings (OAH) for a contested case hearing.    The OAH determined that CalCon had violated the Act and the State Banking Commissioner subsequently ordered CalCon to reimburse the fees. CalCon filed a petition for review in the district court, and the district court affirmed. CalCon appeals from the district court's decision.    We affirm.

## *ISSUES*

[¶2]    CalCon presents the following issues:

> 1. Whether the Office of Administrative Hearings erred as a matter of law in its construction and interpretation of Wyoming Statute § 40-23-114(d).
>
> 2. Whether the decision of the Office of Administrative Hearings is arbitrary, capricious, and not supported by substantial evidence.

The Division states the issues in a substantially similar manner.

## *FACTS*

[¶3]    The facts of this case are undisputed.    In March, 2010, the Division conducted a regular examination of CalCon's brokering activities within the state to determine compliance with the Wyoming Residential Mortgage Practices Act.    After completing the examination, the Division concluded that CalCon, in six separate brokering transactions between January, 2008 and February, 2010, had received application fees and "yield spread premiums"[1] exceeding those which had been previously disclosed to its

---

[1] A yield spread premium is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate.  *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir. 2002).  The federal Department of Housing and Urban Development has explained yield spread premiums as follows:

1

customers. In a representative example of the brokering transactions at issue, A.H., a borrower, submitted a residential loan application to CalCon on July 15, 2009. On the same day, CalCon provided A.H. with a good faith estimate of the transaction fees which did not disclose either an application fee or a yield spread premium. CalCon then sent a revised good faith estimate, which disclosed a $150.00 application fee and a yield spread premium of $4,224.21, to A.H. on November 17, 2009, seven days prior to execution of the mortgage loan closing documents. The revised estimate, however, was not accompanied by a written explanation of the increased fees or the reason for charging fees exceeding those which were previously disclosed to A.H. In the remaining brokering transactions at issue, CalCon followed a similar pattern of disclosure of the yield spread premiums, which ranged in amounts from $131.04 to $11,100.00. Additionally, in one of the remaining transactions, CalCon did not provide a written explanation for charging an application fee that was not previously disclosed, as in the case of A.H.'s mortgage loan application.

[¶4] The Division determined that, in the six transactions at issue, CalCon had failed to comply with Wyo. Stat. Ann. §§ 40-23-114(d) and 40-23-117(a)(iv) because it did not provide a clear written explanation for the increase in the fees and the reason for charging fees exceeding those which were previously disclosed. Relying on Wyo. Stat. Ann. § 40-23-103(a)(vii), which provides that the State Banking Commissioner shall "[r]equire the mortgage broker to reimburse the borrower for undisclosed or incorrectly disclosed fees,"

---

Payments to brokers by lenders, characterized as yield spread premiums, are based on the interest rate and points of the loan entered into as compared to the par rate offered by the lender to the mortgage broker for that particular loan (e.g., a loan of 8% and no points where the par rate is 7.50% will command a greater premium for the broker than a loan with a par rate of 7.75% and no points). In determining the price of a loan, mortgage brokers rely on rate quotes issued by lenders, sometimes several times a day. When a lender agrees to purchase a loan from a broker, the broker receives the then applicable pricing for the loan based on the difference between the rate reflected in the rate quote and the rate of the loan entered into by the borrower. . . .

Lender payments to mortgage brokers may reduce the up-front costs to consumers. This allows consumers to obtain loans without paying direct fees themselves. Where a broker is not compensated by the consumer through a direct fee, or is partially compensated through a direct fee, the interest rate of the loan is increased to compensate the broker or the fee is added to principal. In any of the compensation methods described, all costs are ultimately paid by the consumer, whether through direct fees or through the interest rate.

1999 Statement of Policy, 64 Fed. Reg. at 10081 (footnotes omitted).

the Division requested that CalCon refund the application fees and yield spread premiums to the borrowers. On July 28, 2010, after CalCon failed to comply with the Division's request, the Division sent CalCon a "Notice of Intent to Request the Commissioner to Issue Order Compelling Compliance with Report of Compliance Examination." CalCon objected to the Notice of Intent and requested a contested case hearing before the Office of Administrative Hearings.

[¶5] At the contested case hearing, the presiding hearing examiner received testimony from the compliance examiner who conducted the review of CalCon's brokering activities, the assistant banking commissioner, and CalCon's owner. Based on this testimony, the hearing examiner concluded that CalCon should be required to reimburse the application fees and yield spread premiums to the respective borrowers. The Commissioner adopted the hearing examiner's findings of fact and conclusions of law, and issued a final order directing CalCon to reimburse the fees at issue. The Commissioner concluded as follows:

> 37. . . . I am persuaded by the Division's argument that the intent of [Wyo. Stat. Ann. § 40-23-114] requires a broker to provide the consumer a clear written explanation of the increased fees at issue in this case and the reasons for the increase. When a broker receives fees that increased from the first or most recent good faith estimate, the broker must provide a revised good faith estimate to the borrower at least three business days prior to closing, as well as a clear written explanation of the increase in fee and the reason for charging a fee that exceeded that which was previously disclosed. Simply providing a revised good faith estimate which identifies the increased fee, without any explanation as CalCon did in this case, does not comply with the statute.
>
> 38. Conversely, CalCon's interpretation of [Wyo. Stat. Ann. § 40-23-114] defeats the purpose of the statute. CalCon's position would allow brokers to increase and receive fees in excess of the fees initially disclosed to its customers without ever having to provide a clear written explanation of the increase in fees and the reason for the increase, as long as a revised good faith estimate matched the fees on the HUD settlement statement. If the borrower wanted to know if any fees increased during the loan process, the borrower would have to compare each good faith estimate, line by line. Such an interpretation would thwart the legislative purpose of the statute to construe it in such a manner as to allow a broker to increase fees without ever having to fully inform the borrower

of the increase.

CalCon filed a petition for review in the district court, and the district court affirmed after concluding that CalCon's interpretation of Wyo. Stat. Ann. § 40-23-114 "would render the subsections in (d)(i) and (ii) meaningless." CalCon timely appealed the district court's decision.

## *STANDARD OF REVIEW*

[¶6] When we consider an appeal from a district court's review of an administrative agency's decision, we review the case as though it had come directly from the administrative agency. *State ex rel. Dep't of Family Servs. v. Kisling*, 2013 WY 91, ¶ 8, 305 P.3d 1157, 1159 (Wyo. 2013). The extent of our review is governed by Rule 12.09 of the Wyoming Rules of Appellate Procedure. That rule provides that "Review . . . shall be confined to the record as supplemented pursuant to Rule 12.08 and to the issues set forth in the petition and raised before the agency. Review shall be limited to a determination of the matters specified in Wyo. Stat. 16-3-114(c)." Wyo. Stat. Ann. 16-3-114(c) (LexisNexis 2011), part of the Wyoming Administrative Procedure Act, provides that the reviewing court shall:

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>
>> (B) Contrary to constitutional right, power, privilege or immunity;
>>
>> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>>
>> (D) Without observance of procedure required by law; or
>>
>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We review an agency's conclusions of law *de novo*, and "[w]e will affirm an agency's legal conclusion only if it is in accordance with the law." *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 26, 188 P.3d 554, 562 (Wyo. 2008) (quoting *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo. 2005)).

4

[¶7]   The parties agree that the dispositive issue in this case is whether the Commissioner properly interpreted Wyo. Stat. Ann. § 40-23-114 in determining that CalCon was required to provide a written explanation of increased application fees and yield spread premiums in the transactions at issue.  The statute provides, in relevant part, as follows:

> **§ 40-23-114.  Disclosure of mortgage broker fees.**
>
> (a) Within three (3) business days of a borrower signing a completed mortgage loan application and before the borrower provides any consideration to the licensee, the licensee shall execute and deliver to the borrower a mortgage brokerage agreement. The mortgage brokerage agreement shall be in writing, signed and dated by both the borrower and the authorized representative of the licensed mortgage broker whose services to the borrower constitute mortgage brokering and shall contain the following information:
>
> > . . .
>
> > (iii) A good faith estimate of the fees to be collected, including a credit report fee, property appraisal fee or any other third party fee;
>
> . . .
>
> (d) A mortgage broker shall not receive any fee that inures to the benefit of the mortgage broker, either directly or indirectly if it exceeds the fee disclosed on the most recent good faith estimate unless:
>
> > (i) The need to charge the higher fee was not reasonably foreseeable at the time the good faith estimate was written; and
>
> > (ii) The mortgage broker has provided to the borrower, no less than three (3) business days prior to the signing of the mortgage loan closing documents, a new good faith estimate of settlement costs, a clear written explanation of the increase in the fee and the reason

5

for charging a fee that exceeds that which was previously disclosed.

[¶8]   CalCon contends that, under Wyo. Stat. Ann. § 40-23-114(d)(ii), a broker is not required to provide a clear written explanation of an increase in fees as long as the new or increased fee is listed on a revised good faith estimate provided to the borrower at least three days prior to closing.  This assertion is based on CalCon's interpretation of the phrase "most recent good faith estimate."  CalCon claims that "As used in Wyoming Statute § 40-23-114, the phrase 'most recent good faith estimate' can only refer to the good faith estimate provided to the separate borrowers *most recent in time to the date of closing*."  (Emphasis in original.)  According to CalCon, "Since the date of closing is the date on which CalCon received the fees at issue from the lender, and since the yield spread premiums and/or application fees received by CalCon were disclosed on the good faith estimate, CalCon was not required to provide the information contemplated by Wyoming Statute § 40-23-114(d)(ii)."  CalCon asserts that its interpretation is consistent with the mortgage lending process because "A good faith estimate provided at the time of loan application can only provide that information which is known at the time by the mortgage broker.  Once loan terms have been locked, those terms are provided in a good faith estimate to the borrower."  CalCon's argument suggests that a good faith estimate can be provided only when the lender "knows" what the lending fees will be.  We cannot agree.  CalCon misapprehends the nature of an "estimate," as well as the very purpose that Wyo. Stat. Ann. § 40-23-114(d)(ii) is intended to serve.

[¶9]   In interpreting the phrase "most recent good faith estimate," as used in Wyo. Stat. Ann. § 40-23-114, we strive to give effect to the intent of the legislature.  We look first to the plain meaning of the language chosen by the legislature and employ well-accepted rules of statutory construction if that language is ambiguous or capable of varying interpretations. *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 43, ¶ 10, 154 P.3d 331, 334 (Wyo. 2007).

> A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.
>
> We have recognized that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but is not conclusive. . . . Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

6

*Id.*, ¶ 13, 154 P.3d at 335 (quoting *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶¶ 25, 28, 150 P.3d 673, 683-84 (Wyo. 2007)) (internal citations omitted). "[I]t is a fundamental rule of statutory interpretation that all portions of an act must be read in pari materia, and every word, clause, and sentence must be construed so that no part is inoperative or superfluous." *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Singer*, 2011 WY 57, ¶ 12, 248 P.3d 1155, 1159 (Wyo. 2011) (quoting *Deloges v. State ex rel. Wyo. Workers' Compensation Division*, 750 P.2d 1329, 1331 (Wyo. 1988)).

[¶10]   We conclude that the statute is unambiguous.  Under Section 114(d), a broker may only receive a fee that exceeds the fee disclosed on the "most recent good faith estimate" if a "new good faith estimate," accompanied by a written explanation of the increase in the fee and the reason for charging a fee that "exceeds that which was previously disclosed," is provided to the borrower at least three days prior to closing.  The statute's references to a "new good faith estimate" and to a fee exceeding that which was "previously disclosed," indicate that the "most recent good faith estimate" refers to the estimate that has previously been provided to the borrower, as required by Wyo. Stat. Ann. § 40-23-114(a)(iii).  If the broker seeks to charge a higher fee, then the broker must provide a new good faith estimate, which then replaces the original good faith estimate as the "most recent good faith estimate."  In this manner, the statute operates to prevent a broker from charging a fee that has increased from the previous estimate without providing a written explanation and the reason for charging a fee that exceeds that which was previously disclosed.  This operation is consistent with the purpose of the statute, as explained by the assistant banking commissioner at the contested case hearing:

> [T]hat statute is set up, it's designed, again, as a consumer protection statute, to try, to the best of its ability, to prevent the, quote unquote, bait and switch tactics [by requiring a] good faith estimate disclosure to consumers to tell them exactly what they're going to have to pay in the transaction that they are agreeing to move forward with.
>
> The law then says that you can't charge anything different[] than what you've told consumers unless you re-disclose to them with a new good faith estimate, and specifically provide them with a written explanation of what is changing on that recent good faith estimate and the reason that it's changing.

Further, we note that any reference to the time of closing as the operative date for determining the "most recent good faith estimate" is conspicuously absent from the statute.  If the legislature had intended for the "most recent good faith estimate" to be measured relative to the closing date, it could have easily so provided.  However, we are

7

unable to find such intent in the plain language or the purpose of the statute. For these reasons, we conclude that the "most recent good faith estimate," as used in Wyo. Stat. Ann. § 40-23-114, refers to the estimate that has previously been provided to the borrower. Because CalCon received fees in excess of the fees originally disclosed to the borrowers in the transactions at issue, and because it did not provide a clear written explanation of the increased fees or the reason for charging fees exceeding those which were previously disclosed, the Banking Commissioner properly concluded that CalCon was statutorily precluded from accepting the increased fees.

[¶11] In its second issue, CalCon contends the Commissioner's decision was *per se* "arbitrary and capricious" because the Division has not used its regulatory powers to define the phrase "most recent good faith estimate." We find no merit in this argument. We have already determined that the plain language of the statute is sufficient to convey the meaning of the phrase "most recent good faith estimate." As we have previously stated, "A clear statutory direction is enforceable by an agency in accordance with its plain meaning without promulgation of a rule." *Thomson v. Wyoming In-Stream Flow Comm.*, 651 P.2d 778, 791 (Wyo. 1982). Accordingly, we conclude that the Commissioner's decision was not arbitrary or capricious.

[¶12] Affirmed.